The Honorable Ricardo S. Martinez
Non-Jury Trial Date: January 18, 2022

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

JOHN M. KIVLIN,

                                    Plaintiff,

        v.

CITY OF BELLEVUE, A municipal
corporation, and PATRICK C. ARPIN, and
CARL KLEINKNECHT, JOHN DOES
NOES. 1 to 2 in their individual and official
capacities,

                                    Defendants.

No. 2:20-cv-00790 RSM

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSAL OF
PLAINTIFF'S COMPLAINT

**Noted for Hearing: Friday, May 14, 2020.**

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

## I.    INTRODUCTION

This matter arises from Plaintiff John Kivlin's resignation from his job as a Police Officer with the Bellevue Police Department in 2018. Since then, the Washington State Criminal Justice Training Commission found, by clear and convincing evidence, that Officer Kivlin engaged in official misconduct in violation of criminal laws while serving as a BPD Police Officer and revoked his Washington Peace Officer Certification. The King County Superior Court ruled that the CJTC proceedings comported with all evidentiary and constitutional standards afforded Kivlin and that these findings and conclusions were supported by substantial evidence—much of which came directly from Kivlin's own sworn testimony.

Despite this, Kivlin is suing his former department and two Assistant Police Chiefs for simply performing their official job duties and cooperating with the Commission's administrative proceedings as required by state law. The matter is set for a bench trial with this court on January 18, 2022. Plaintiff's Complaint should be dismissed as a matter of law.

## II.    RELIEF REQUESTED

Pursuant to Fed.R.Civ.P. 56, Defendants City of Bellevue, Patrick Arpin, and Carl Kleinknecht request the court enter an order dismissing Plaintiff's Complaint and causes of action therein against them with prejudice as a matter of law. Defendants further request an award of costs and reasonable attorney fees based on RCW 4.84.185 and 42 U.S.C. §1988.

## III.    FACTS

**A.    Officer Kivlin Resigned From Employment as a Bellevue Police Officer in 2018 To Avoid Termination for Misconduct Based on an Internal Investigation.**

Plaintiff John Kivlin worked as a Police Officer for the Bellevue Police Department ("BPD") from 2002 to August 2, 2018 when he resigned. In 2017, he met a woman online through Craigslist with whom he engaged in an intimate relationship with for approximately six months. In April of 2018, the woman reported to the BPD that Officer Kivlin had assaulted and threatened her, providing factual details and photographs of

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

apparent injuries. She also reported that Kivlin told her that he used the Department's ACCESS database[1] to run searches for information about her and her family. *See, Dec. of Jayne L. Freeman, Ex. A,* pp. 1205-1219 *(CJTC Findings of Fact, Conclusions of Law, and Order Revoking Peace Officer Certification), attached hereto as Appendix A.*

The BPD immediately referred the matter to the King County Sheriff's Office (KCSO) for investigation of the alleged criminal conduct. The KCSO arrested Kivlin that night where he was staying in Gig Harbor. *Freeman Dec. Ex. A,* p. 1044-1046. At the same time, BPD initiated an internal administrative investigation, Formal Standards #18-006, to determine whether Kivlin had engaged in conduct that violated the BPD's own internal policies. *App. A*, p. 1211. Kivlin was placed on paid administrative leave pending the outcome of the investigation. Major Kleinknecht served Kivlin with notices regarding the internal investigation and administrative leave the same evening he was arrested. *Id.,* p. 1211*; Freeman Dec. Ex. A,* pp. 724-727 *(*Kleinknecht testimony); pp. 58-84 (BPD Reports).

1.   <u>Internal Investigation Confirmed Officer Kivlin Violated Bellevue Police Department Policies.</u>

The City hired an outside investigator, Katherine Weber, to conduct the internal investigation, with facilitation provided by BPD Major Kleinknecht. The investigator interviewed several witnesses and reviewed thousands of pages of texts and other documentation. *Id.*., pp. 728, 85-199; *App. A*, p. 1211.

On July 23, 2018, Ms. Weber issued an investigative report, finding a preponderance of the evidence established that Officer Kivlin had engaged in the following conduct:

**1.    Improperly utilized the City's equipment/software, the**

---

[1] ACCESS stands for "A Central Computerized Enforcement Service System." It "provides a means for agencies to query multiple state and national databases to include information systems provided by the Department of Corrections, Department of Licensing, Parks, the Washington Crime Information Center (WACIC), and the Washington State Identification Section (WASIS). … ACCESS usage is limited to criminal justice purposes[.]" *See,* https://www.wsp.wa.gov/_secured/access/access.htm. *See also*, *Freeman Dec*., Ex. A, pp.641-642, 1063-1067.

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 2
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

**NORCOM Mobile system and the WSP ACCESS system to
access confidential law enforcement data base for personal,
non-law-enforcement purposes;**

2.   Left Bellevue City Limits in his assigned patrol vehicle while on
duty, without the knowledge or authorization of his supervisor, for
non-law-enforcement reasons;

3.   Logged himself out as "on a workout" in order to meet
Ms. Schneider for personal reasons on at least one occasion;

4.   On at least one other occasion utilized sick leave to meet
Ms. Schneider for sex; and

5.   **Misrepresented to his supervisor the reason for his
unavailability to respond to a call out involving a fatal
accident.**

*Id.* at p. 85-105; App. A, ¶3.22(emphasis added).[2]

On the day of his scheduled IA interview, Kivlin reported that he was "unable to
participate in the interview due to stress-related reasons." *Id*. p. 86; App. A, ¶3.20.
Therefore, Ms. Weber did not make findings regarding at least eleven other allegations,[3]
specifically noting her findings were limited to claims where there was "*an overwhelming
amount of compelling and objectively-unimpeachable evidence to support these allegations,
regardless of Ofc. Kivlin's participation in the investigation*." *Id.* at p. 87.  However, Kivlin
had already given his notice of intent to resign from the BPD two weeks prior to the
completion of Ms. Weber's report, rendering potential findings on the remaining claims
moot. *Id*., p. 281; App. A, ¶3.21.

2.   <u>Kivlin Chose to Resign from the Bellevue Police Department In an Effort to
Avoid Termination, Hoping to Conceal the Evidence of His Misconduct.</u>

On July 6, 2018, Officer Kivlin notified supervisors that he intended to resign from
his job with the BPD, but not until August 2nd. *Id*., p. 281; Dkt. 1-1, at ¶ 4.23; App. A ¶
3.21. Until then, he was still employed and on leave with the BPD, receiving full pay and

---

[2] Items No. 1 and 2 were later found by the CJTC to have, indeed occurred, and amounted to criminal conduct "disqualified" him from continuing to serve as a law enforcement officer in Washington pursuant to RCW 43.101.010. *See, App. A,* pp. 1212-1215.

[3] The allegations Ms. Weber did not address included, but were not limited to, unlawful assault, engaging in unauthorized ride-along with Ms. Schneider, and engaging in sexual contact on City property and in his patrol vehicle.  In the meantime, Officer Kivlin was arrested on two separate occasions by other agencies, spent time in jail, and released. *See*, Dkt. 1-1, *Freeman Dec*., Ex. A, pp. 1046-1047, 1051-1052 (Kivlin).

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

health benefits.[4] In the meantime, the internal investigation was completed, and a report was issued by Ms. Weber. *Id.*, pp. 105-199. Upon review of the facts, evidence, and findings, Assistant Chief Patrick Arpin proposed termination of Kivlin's employment and issued a pre-termination notice to Kivlin and his union representatives on July 24, 2018. *Id.*, p. 219-228; App. A ¶ 3.22; Assistant Chief Arpin's pre-termination notice was primarily based on the extensive investigation conducted by Ms. Weber. and notified Kivlin of his right to respond orally or in writing and to request a hearing if he disagreed with this discipline. *Id.* at p.228.

In response, Kivlin's union representatives urged the City to accept his resignation and allow him to resign effective August 2nd rather than go through with a pre-termination hearing and termination. *See, Dec. of Melissa Chin*. Kivlin was allowed to resign on August 2, 2018. App. A ¶3.23; *Freeman Dec*., Ex. A, p. 282.

**B.    Following Its Own Contested Administrative Hearing in 2019, the CJTC Revoked Kivlin's Peace Officer Certification for the State of Washington.**

In June of 2019, the Washington Criminal Justice Commission (CJTC) – the State agency charged with commissioning law enforcement officers in Washington - issued a Statement of Charges recommending revocation of Officer Kivlin's Peace Officer Certification. *See, Freeman Dec*., Ex. A, p. 52-54; App. A.[5] Kivlin challenged the recommendation and represented by legal counsel Patricia Rose,[6] participated in a two-day contested hearing on December 17-18, 2019. *Id.*, p. 1205-1208; pp. 552-851 (Dec. 17, 2019 transcript), pp. 852-1186 (Dec. 19, 2019 transcript).

The CJTC, represented by an Assistant Attorney General, called five witnesses, who Kivlin's attorney had the opportunity to cross-examine. *Id.* at p. 1207. Mr. Kivlin himself testified and called two additional witnesses. *Id.* A total of 21 documentary exhibits were submitted between the parties and counsel for each presented argument. *Id.* at p. 1208. The

---

[4] Setting a separation date on August 2nd allowed Kivlin to receive an additional month of City-paid health benefits for him and his family for the month of August in addition to the rest of July. *Id*., pp. 1057 (Kivlin).
[5] The entire 1219-page Certified Appeal Board Record is attached as Ex. A to *Freeman Dec*, and transcript from the first pre-hearing conference as Ex. B
[6] Ms. Rose also represents Kivlin as Plaintiff's counsel here and initiated this lawsuit on his behalf.

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 4
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

panel also had the opportunity to ask questions and did so with Mr. Kivlin and other witnesses.[7] *Id.*, pp. 1010-1096.

On January 13, 2020, the CJTC Hearing Panel issued an Order with Findings of Fact and Conclusions of law. *App. A.* The Panel found, by *clear and convincing* evidence, that Kivlin had engaged in misconduct that disqualified him from serving as a law enforcement officer in the State of Washington and revoked his Peace Officer Certification. Specifically, the Panel found Kivlin: 1) engaged in conduct that constituted the crime of Official Misconduct, RCW 9A.80.010, when he improperly used the ACCESS system to run queries on his intimate partner nine times, and 2) engaged in conduct that would constitute the crime of Making a False or Misleading Statement to a Public Servant, RCW 9A.76.175, when he falsely stated he was with his family in Olympia and therefore could not respond to a fatality accident. *Id.*, at p. 1214-1215.

Mr. Kivlin admitted he abused his privileges with the ACCESS system[8] and undisputed text messages in evidence revealed he was actually in Tacoma making plans to meet up with his intimate partner when falsely representing to his supervisor he could not respond to a fatality accident because he was purportedly elsewhere with his family. *Id.*[9] at 1210. The CJTC Panel found:

> "[a] majority of the Hearing Panel further concludes that Mr. Kivlin's disqualifying misconduct [involving his ACCESS violations] would alone warrant revocation of Mr. Kivlin's peace officer certification."

*Id.* at 1215 (emphasis added). The CJTC Findings are readily available in the public record. *Freeman Dec.*, ¶13 (https://www.cjtc.wa.gov/docs/default-source/certification/hearings/kivlin---fof-col-(web).pdf?sfvrsn=52acbd6b_2).

---

[7] Prior to the hearing, the parties submitted exhibit and witness lists, opening briefs, reply briefs, objections, and participated in pre-hearing conferences. *Ex. A to Freeman Dec.*, at p. 5-7, 427-515.

[8] *See, App. B*, ¶2-4; App. A ¶3.5-3.9, ¶4.17-4.20. Kivlin testified under oath that he *did* knowingly abuse his ACCESS privileges, that he lied about it to the affected party, and that he contacted the subject of a protective order in violation of criminal and administrative orders in 2018. *Freeman Dec.* Ex. A., pp.1051-1052, 1016-1017, 1060 ("*allegation number 2 is with respect to accessing the ACCCESS database. Do you agree you did that? A: Yes*").

[9] *See also*, pp. 1036-1038, 1066-1067, 1072-1077, 1080-1085 ()("*I got a callout for the fatal, but I'm saying I'm in Olympia. I don't really want to go to work. I would rather see you.*"); App. B, ¶2-3.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

These findings and conclusions are established and cannot be disputed.

**C.     The King County Superior Court Affirmed the CJTC's Findings & Conclusions and That the Matter was Fairly and Fully Litigated.**

Kivlin appealed the CJTC's Findings and Conclusions to the King County Superior Court and on December 18, 2020, Judge Melinda Young affirmed the CJTC's order. *See, Freeman Dec. Ex. C, attached as Appendix B*. She also ruled that Kivlin received due process and fair evidentiary rulings throughout the proceedings. *Id*. These findings and conclusions are judicially established and undisputed.

**D.     Facts Not Material to Determination of Plaintiff's Claims Against the Bellevue Defendants.**

Mr. Kivlin devotes a great deal of space in his Complaint detailing criminal allegations, evidence, charges, arrests, and outcomes of various criminal investigations and proceedings involving the woman who initially reported his conduct to BPD (and other agencies). However, **none of these <u>later</u> allegations, which did not arise until July-August of 2018, served as the basis of BPD's investigation and proposed discipline of Kivlin as one of its commissioned patrol officers.**  Nor did they serve as the basis for the CJTC's revocation of Kivlin's Peace Officer certification. *See,* App. A, p. 1205-1219, 85-105.

In fact, Kivlin never disputed the authenticity of texts corroborating the conduct that led to the investigative findings, BPD closure memo, and eventually to the CJTC's independent decision to revoke his Peace Officer Certification:

> A: so we looked at several sets of text messages today –right?—and there was some testimony that she made some up I heard you say in your direct, is that rights? **A: Yes**. Q: okay, but all the ones we looked at today are, in fact, real, to the best of your knowledge, right? **A: I haven't looked through all of them, but to the best of my knowledge, yes.**

*Freeman Dec.,* Ex. A, p. 1083:23-1084:4 (Kivlin Testimony); He also readily admitted misusing the confidential ACCESS database at the BPD for personal reasons. He simply asserts that, in his own opinion, the Bellevue Police Department should have little concern about his conduct as a Police Officer in performance of his official duties.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

## IV.    EVIDENCE RELIED UPON

- Declaration of Jayne L. Freeman, with attached exhibits from the record of the CJTC proceedings Re: Kivlin (#18-708), CJTC Findings of Fact and Conclusions of Law (Appendix A), and Order Affirming Findings of Fact and Conclusions of Law (Appendix B);
- Declarations of Melissa Chin, Patrick Arpin, Carl Kleinknecht;
- Pleadings in the court record.

## V.    LEGAL AUTHORITY

**A.    Collateral Estoppel Precludes Plaintiff from Re-Litigating Issues Upon Which Findings Made by the Criminal Justice Training Commission and Superior Court, and These Findings Prevent Plaintiff From Establishing the Required Elements of His Claims.**

To invoke collateral estoppel, defendants must establish that: (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding;[10] and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied. *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 152 Wash. 2d 299, 321, 96 P.3d 957, 968 (2004). Prongs two, three and four are easily met here.

### 1.    CTJC Hearing is A Judgment on the Merits

First, Federal courts have established that findings of fact and conclusions of law from CJTC administrative proceedings constitute a judgment on the merits with collateral estoppel effect. *See, Wallace v. Island Cty.,* No. C09-0823RSL, 2011 WL 6210633, at *12–14 (W.D. Wash. 2011), *citing United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Miller v. County of Santa Cruz,* 39 F.3d 1030, 1032–33 (9th Cir.1994) (federal common law rules of preclusion "extend to state administrative adjudications of legal as well as factual issues, even if unreviewed.").[11]

---

[10] It is undisputed Kivlin was a party to the CJTC and King County proceedings. *See,* App. A, B.

[11] Both state and federal courts have applied collateral estoppel where an issue was adjudicated by an administrative agency in the earlier proceeding. *E.g., Univ. of Tenn. v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986*); Miller v. County of Santa Cruz,* 39 F.3d 1030 (9th Cir.1994); *Reninger*, 134 Wash.2d 437, 951 P.2d 782; *Shoemaker,* 109 Wash.2d 504, 745 P.2d 858; *Luisi Truck Lines*, 72 Wash.2d 887, 435 P.2d 654; *see Claim and Issue Preclusion*, 60 Wash. L.Rev.. at 830; *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107–08, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991)(issue preclusion prohibited relitigation of issue decided by administrative agency).

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

Washington courts will consider the following additional factors when determining whether an administrative decision precludes relitigation of an issue: (1) whether the agency acted within its competence in making a factual decision, (2) agency and court procedural differences, and (3) policy considerations. *State v. Dupard*, 93 Wash.2d 268, 275, 609 P.2d 961 (1980).

In *Wallace*, Judge Lasnik ruled that a CJTC hearing like Kivlin's *did* collaterally estop a former police officer from relitigating *factual issues* to pursue claims against his former employer. In particular, the court held the hearing resembled a judicial proceeding because:

> …[b]oth sides were represented by counsel, both sides had an opportunity to present testimonial and documentary evidence, and both sides submitted memoranda and presented arguments. […] Deputy Wallace testified on his own behalf and presented the testimony of Lana Wallace, Michael Gregory Anderson, Sergeant Norrie, Deputy Franklin Gomez, and Deputy John Sawyers. […] The CJTC panel also considered documentary exhibits offered by both parties. […] The CJTC panel made specific findings of fact and conclusions of law regarding disputed issues.

2011 WL 6210633, at *12.

Like the hearing at issue in *Wallace*, Kivlin's CJTC hearing resembled a judicial proceeding and afforded Kivlin the opportunity to fully litigate issues—he was party to the two-day proceedings, both sides were represented by counsel of their choice, presented testimonial and documentary evidence, cross-examined witnesses, argued their case to a 5-member panel, and submitted memoranda and briefing. *See*, App. A; *compare, Wallace*, at 12-14. Kivlin called Sergeant Brian Shovlin, Officer Robert Welty, and testified on his own behalf. *Id.* at p. 1010-1096.  Like the panel in *Wallace*, at p. 12-14, the CJTC panel here made specific findings of fact and conclusions of law regarding disputed issues, including that Officer Kivlin's conduct did occur, did warrant revocation of his certification to serve as a police officer anywhere in Washington, and would have warranted termination from the BPD). *Id.* at 1205-1217; The record reflects that the CJTC panel made an independent assessment of the evidence and issues before it, similar to a state court

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 8
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

proceeding and in accordance with sufficient procedural safeguards and did not simply rely on or adopt prior findings of other agencies. *Id.*

It is also judicially established that the CJTC proceeding was conducted with sufficient safeguards to be equated with a state court judgment. *Id., citing Miller,* 39 F.3d at 1033; *Plain v. McCabe,* 797 F.2d 713, 719 (9th Cir.1986).   The parties had three pre-hearing conferences to argue admissibility of evidence and witnesses, and the panel appropriately considered arguments and evidence each time. *App. A.*  On appeal, the King County Superior Court ruled that Kivlin received due process, fair evidentiary rulings, and unbiased consideration by a qualified tribunal throughout the proceedings. *See,* App. B.

2.   <u>Issues Decided by the CJTC and Superior Court Are Established as a Matter of Law and Cannot be Re-Litigated Here.</u>

Prong one is issue specific, but the dispositive issue in both proceedings is the CJTC panel already made findings of fact and conclusions of law that Kivlin engaged in specific misconduct: improper use of the ACCESS system for personal reasons and making a false statement to a public officer.  The CJTC concluded that this misconduct was criminal in nature, and that the admitted ACCESS violations would have, alone, merited decertification as a law enforcement officer. in the State of Washington.  To the extent Plaintiff attempts to argue otherwise or suggests a question of material fact or law exists with respect to any claim against the Bellevue defendants that conflicts with these findings and conclusions, he should be barred from doing so.

3.   <u>Application of Collateral Estoppel Does Not Work an Injustice.</u>

Application of collateral estoppel does not work an injustice on Kivlin; he was afforded fair hearings before the CJTC and King County Superior Court.  He had an opportunity (with the same attorney) to argue for admission or exclusion of evidence and witnesses, present his case, cross-examine witnesses, and testify on his own behalf. Motivation for his full and concerted effort to prevent revocation of his CJTC certification was high, as he was well-aware the ramifications of losing it would prevent him from working as a police officer anywhere in the state, not just at the BPD.

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 9
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

1

2

**B.      Plaintiff's Claims are Barred by Absolute Witness Immunity.**

Many of Kivlin's claims center on alleged "improper statements" by Defendants:

3

4

4.48     Between August 2, 2018 and the present, Plaintiff has been unable to obtain employment as a law enforcement or peace officer or other comparable employment to that he held with Defendant City in significant part **because of the allegations made by BPD to the CJTC**.

5

Dkt. 1.1 at ¶ 4.48 (emphasis added).

6

7

8

9

10

11

12

13

14

Witnesses have *absolute* immunity from civil liability under based on their testimony in a judicial proceeding. *Briscoe v. LaHue*, 460 U.S. 325, 334, 103 S. Ct. 1108, 1115, 75 L. Ed. 2d 96 (1983) (immunity from §1983 claims); *Bruce v. Byrne-Stevens & Assocs. Eng.'s, Inc.,* 113 Wash. 2d 123, 125, 776 P.2d 666, 667 (1989) (immunity from all state law claims, including defamation).   Absolute immunity, where it applies, protects the government agency as well as its agents and justifies dismissal of an action against both. *Id.* at 125; *Newberry v. Fiberglass Struct. Eng'g, Inc.,* 2007 WL 445450, at *5 (W.D. Wash. Feb. 6, 2007); *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wash. App. 569, 576-77, 950 P.2d 20, *rev. den.* 135 Wash.2d 1015, 960 P.2d 937 (1998).[12]

15

16

17

18

19

20

21

22

23

24

"Statements made during the course of and relevant to the proceedings of an administrative agency acting in a quasi-judicial manner are absolutely privileged." *Hill v. J.C. Penney, Inc.*, 70 Wash. App. 225, 238–39, 852 P.2d 1111, 1119–20 (1993), *citing Hurst v. Farmer,* 40 Wash. App. 116, 117, 697 P.2d 280, *rev. den.,* 103 Wash.2d 1038 (1985) (statements relevant to administrative agency proceeding protected by absolute immunity even though the statements were not made in a courtroom under oath); *Pratts v. Sujan*, 176 F.3d 484 (9th Cir. 1999) (witness immunity applicable to administrative proceedings).   The immunity applies regardless of whether the testifying witness is a party or a third party. *See, Briscoe; Lynch v. Trendwest Res., Inc.*, 2006 WL 44360, at *3 (W.D. Wash. Jan. 6, 2006). This immunity is not limited to what a person may say under oath on

25

26

27

---

[12] An immunity "frees one who enjoys it from a lawsuit whether or not he acted wrongly." *Richardson v. McKnight*, 521 U.S. 399, 403, 117 S.Ct. 2100, 138 L.Ed. 2d 540 (1997). An absolute privilege absolves the defendant of all liability for defamatory statements; *Bender v. Seattle*, 99 Wash.2d 582, 600, 664 P.2d 492 (1983).

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 10
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

the witness stand, but extends to communications in connection with a proceeding, including preliminary reports. *See*, *Bruce*, at 136; W. *One Auto. Grp., Inc. v. Fearing*, 2007 WL 30885, at *5 (E.D. Wash. Jan. 3, 2007) (absolute immunity for filing declaration); B*rown v. Chrysalis Sch., Inc.,* 168 Wash. App. 1007 (2012).

To the extent Plaintiff's claims are based on any statements or communications in conjunction with the CJTC's administrative proceedings, Defendants are absolutely immune from liability. *See, e.g,. Freeman* Dec. Ex. A, p. 56 (Peace Officer Certification by Arpin); pp. 720-771 (Kleinknecht testimony); pp. 860-966 (Arpin testimony). All such claims should be dismissed as to all Defendants. See, e.g., Dkt. 1-1, ¶¶4.33, 4.47, 4.48, 5.5-5.7, 7.2-7.4, 9.6-9.10.

## C.   Plaintiff's State Tort Reputational Claims Should Be Dismissed as a Matter of Law.

### 1.   Plaintiff Cannot Establish Actionable Defamation.

Kivlin alleges Defendants published statements "implying that he engaged in criminal conduct and other conduct" that were not accurate or true. Dkt. 1-1, ¶. 5.2. He further alleges Defendants have "permitted" documents with "false allegations" to remain in files. *Id*. ¶5.5. To prove a claim of defamation, Plaintiff must establish: "(1) a false statement, (2) publication, (3) fault, and (4) damages." *Phoenix Trading, Inc. v. Loops LLC*, 732 F.3d 936, 944 (9th Cir. 2013) (quoting *Duc Tan v. Le,* 177 Wn.2d 649 (2013)).

#### a.   Plaintiff Cannot Establish Publication of False Factual Statements.

It is a complete defense to claims of defamation if the alleged false statements are true or consist of nonactionable opinions. *Phoenix Trading*, at 945 (*quoting Robel v. Roundup Corp*., 148 Wn.2d 35 (2002) ("Because expressions of opinion are protected under the First Amendment, they are not actionable."); *see also*, Emmanuel *v. King Cty.,* 2020 WL 4922206, at *6 (W.D. Wash. 2020) (unpub.), *quoting Life Des. Ranch, Inc. v. Sommer*, 191 Wn.App.320, 364 P.3d 129, 135 (2015).

Specifically, Kivlin points to the following statement by Defendant Arpin after his first arrest: "*It's a very unfortunate thing that occurred*" and "*a bad personal choice is the*

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 11
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

*way I'd put it*." *Id.*, ¶4.12, ¶5.4. Chief Arpin's statements quoted above are clearly "opinion", not facts. Even if Arpin or anyone from the BPD had actually said that Kivlin *did* engage in "criminal conduct" or "other misconduct," it has been established as a matter of law that this is true: the CJTC found he did engage in misconduct that was criminal in nature. *See*, App. A, B.[13]

Kivlin concedes he is merely alleging that statements made to the public or media "impl[ied] [Kivlin] engaged in criminal conduct or other misconduct". Dkt. 1-1, ¶5.2. However, defamation claims by "implication" are not actionable either *See*, *Yeakey v. Hearst Commc'ns, Inc.,* 156 Wash. App. 787, 792, 234 P.3d 332, 335 (2010), *Lee v. Columbian, Inc.,* 64 Wash. App. 534, 538, 826 P.2d 217 (1991) (dismissing crane operator's claims that articles citing his history of drug-use and arrests implied he was impaired at the time of a fatal crane accident); *Sisley v. Seattle Sch. Dist.,* 180 Wn. App. 83, 88-89, 321 P.2d 276 (2014) (dismissing defamation claims based on publication that landlords "had been accused of racist renting policies" and referred to as "crack shacks," as meaning of language cannot be extended by innuendo). The court, not the jury, determines the "sting" of a report. *See, Emmanuel, at \*6.*

Finally*,* statements that do not identify Kivlin by name are not actionable. *Emmanuel*, *quoting Camer v. Seattle P-I*, 45 Wn. App. 29, 723 P.2d 1195, 1200 (1986) (citing *Sims v. Kiro, Inc.*, 20 Wn. App. 229, 580 P.2d 642, 645 (1978)) (emphasis added) (plaintiff "must submit convincingly clear proof of his... identity as a target of an allegedly libelous statement). "The identification of the one defamed must be certain and apparent from the words themselves"*;* "One cannot by implication identify oneself as the target of an alleged libel." *Id., at \*8. See, Dkt. 1-1, ¶4.13* (BPD confirmed an "unidentified officer" had

---

[13] Further, these statements could not be "false" when both Plaintiff and his own attorney have made the same or similar statements repeatedly. For example, in closing arguments to the CJTC, his own attorney argued Kivlin was "*engaging in this, you know, horribly bad judgment….*" *Freeman Dec.,* Ex. A, pp. 1129: ll. 17-19; *See also*, pp. 1132: ll. 2-4 ("so he regrets this judgment") pp. 1089-1090 (Kivlin: " *I know it is stupid because I reached out to her…*"): pp. 1025 ("it was a complete mistake" to enter the relationship). Even Kivlin's own proposed findings of fact stated: "Kivlin made what the recognized then and now to be an inappropriate judgment to use the BPD ACCESS database." *Id.*, p. 1192.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1    been arrested). It is undisputed Chief Arpin did not identify Kivlin either when he briefly

2    commented on April 28, 2018.

3                    *b.*        *Plaintiff Cannot Establish Fault or Damages Caused by Defendants.*

4             The standard of fault in defamation cases depends on the nature of the plaintiff. If

5    the plaintiff is a public figure or public official, he must show actual malice. If, on the other

6    hand, the plaintiff is a private figure, he need show only negligence. *LaMon v. Butler*, 112

7    Wash. 2d 193, 197, 770 P.2d 1027, 1029–30 (1989) (*citing Bender* 99 Wash.2d at 582). In

8    *La Mon*, the plaintiff failed to establish a prima facie case of defamation even based on a

9    negligence standard where reporter wrote articles stating the plaintiff had been convicted of

10   assault but failed to mention that the charges were dismissed on appeal. *See also, Lawson v.*

11   *Boeing Co.,* 58 Wash. App. 261, 267, 792 P.2d 545 (1990) (conditional privilege attaches to

12   statements made by *investigating* employees during an investigation, absent evidence that

13   employees knew of or recklessly disregarded the falsity of the allegations); *Reiber v. City of*

14   *Pullman*, 918 F. Supp. 2d 1091, 1108 (E.D. Wash. 2013) (subject's denial that investigation

15   accurately characterized his exact statements did not create disputed material fact

16   preventing dismissal of defamation claim). Kivlin claims the Bellevue Defendants were

17   somehow responsible for additional events that later unfolded in the saga between Kivlin,

18   the King County Prosecutor's Office that filed criminal charges, and King County Courts

19   that made probable cause findings. *See*, Dkt. 1-1, ¶¶4.26-4.27, ¶¶4.34-4.43.

20            Further, defamation is not actionable if it is based on information already in the

21   public domain. *See, Maison de France, Ltd. v. Mais Oui, Inc.,* 126 Wash. App. 34, 51, 108

22   P.3d 787, 797 (2005) (dismissing claims based on publication after litigation began, as facts

23   recites were public knowledge).  It is undisputed Kivlin was arrested multiple times by

24   other law enforcement agencies, criminally charged by the King County Prosecutor's

25   Office, and probable cause was found by King County Superior Court to hold him in jail an

26   proceed with criminal charges. *See*, e.g., *Freeman Dec.*, Ex. A, pp. 229-255; Dkt. 1-1,

27   ¶4.26-4.27, ¶4.34-4.43.  All of this information, as well as the CJTC Findings and Superior

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

1  Court Order affirming, was and is available in the public domain, including public court
2  files and public court hearings.  The Bellevue Defendants cannot be found at fault for
3  purportedly "publicizing" information that was replete in the public record.

4        2.    <u>Plaintiff Cannot Establish an Invasion of Privacy: False Light Claim.</u>

5        Kivlin alleges Defendant committed the tort of invasion of privacy by publishing
6  "private" information regarding his arrest(s) and employment status that placed him in a
7  false light that was highly offensive and which Defendants knew or should have known was
8  false. Dkt. 1-1, ¶6.2-6.3.  An invasion of privacy by false light arises when a defendant
9  publishes statements that place a plaintiff in a false light if (1) the false light would be
10 highly offensive and (2) the defendant knew of or recklessly disregarded the falsity of the
11 publication and the subsequent false light it would place the plaintiff in. *Eastwood* v.
12 *Cascade Broad. Co., Inc.*, 106 Wash.2d 466, 470-71, 722 P.2d 1295 (1986). This claim
13 fails for the same reasons as Plaintiff's defamation claims.

14       3.    <u>Plaintiff Cannot Establish an Actionable Claim for Injurious Falsehoods.</u>

15       Kivlin alleges Defendants "published false statements harmful to [his] interests" that
16 adversely affected his ability to obtain employment as a law enforcement officer elsewhere.
17 Dkt. 1-1, ¶7.2-7.4. It is undisputed that Kivlin's ability to obtain police employment
18 elsewhere is precluded by his de-certification by the CJTC, a superseding, intervening
19 cause for his inability to serve as a law enforcement officer in the State of Washington. This
20 claim also fails for the same reasons Plaintiff's defamation claims fail.

21       4.    <u>Allegedly Defamatory or Injurious Statements Were Privileged and Therefore Not Actionable.</u>

22       Even assuming Kivlin could established a prima facie case of defamation,
23 Defendants can still raise either an absolute or qualified privilege to defend against liability
24 for defamatory statements.  *See, Bender, at* 600. A qualified privilege may be lost only if
25 Plaintiff proves it has been abused.  *Id.*.

26       Once the court determines that such a privilege applies, the burden of proof shifts to
27 the plaintiff to demonstrate abuse of that privilege by *clear and convincing* evidence. *Id.,* at

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

601. To defeat a motion for summary judgment, the plaintiff must present specific facts creating a genuine issue as to whether the defendant's statements were made "after a fair and impartial investigation or upon reasonable grounds for belief in their truth." *Emmanuel, at \*7, quoting Turngren v. King Cty., 104 Wn. 2d. 293, 705 P.2d 258, 268 (1985) (citing Twelker 564 P.2d at 1134-35).* Thus, showing that a privilege applies raises both the standard of fault <u>and</u> burden of proof, even where the plaintiff is a private individual as opposed to a public figure. *Id.* at 601–02.[14] Here, a number of privileges apply to preclude liability for Kivlin's various "reputational" claims.

**The "common interest" privilege** applies when the declarant and the recipient have a common interest in the "subject matter of the communication." This privilege generally applies to organizations, partnerships, and associations and "arises when parties need to speak freely and openly about subjects of common organizational or pecuniary interest." *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wn. App. 147, 162 (2010) (internal citation omitted).  This privilege would apply to any written or verbal statements among BPD personnel and with other agencies in the course of investigations and/or criminal or administrative proceedings, including police reports and memos maintained or shared in the course of law enforcement investigations, internal investigations, and communications with the CJTC.

**The "Intracorporate Communications" Privilege** applies where personnel within the same organization communicate or share information in the ordinary course of business. *See*, e.g., *Woody v. Stapp, 146 Wash .App. 16, 189 P.3d 807, 810 (2008) (statements related to corporate EEO investigation);Henderson v. Pennwalt Corp.*, 41 Wash. App. 547, 558-59 (1985) (statements relating to job performance are not defamatory); *Riser v. Washington State Univ.,* 2018 WL 4955206, at \*6 (E.D. 2018) (privileged applies to information shared about employee's ability to perform his job).To the extent Plaintiff's claims are based on verbal or written information or documentation maintained in City files or shared among

---

[14] The burden of proof is the same at both summary judgment and trial.  *Momah v. Bharti,* 144 Wash. App. 731, 741–42, 182 P.3d 455, 462 (2008).

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

Bellevue personnel in the course of personnel management, operations, investigations, and response to citizen complaints, such communications are privileged.

Law enforcement agencies also have "a qualified privilege when **releasing information to the public or news media concerning official activities**." *Turngren, at 268-69* (release of information to the press/public by police is important function afforded qualified privilege; the standard of proving abuse of the privilege is necessarily high); *See also*, *Emmanuel* at *7 (W.D. 2020) (dismissing defamation claims based on King County press release and police/prosecutor statements about criminal investigation). To the extent Plaintiff's claims are based on response to media inquiries or statements regarding BPD handling of citizen or criminal complaints and investigations, such statements are privileged. *See, e.g.*, Dkt. 1-1, ¶¶2.7, 4.12-4.13, 5.2-5.7, 6.2-6.5,7.3-7.4.

5.    Plaintiff's Reputational Claims Are Barred by Additional Immunities.

In addition to absolute witness immunity and privileges that apply to various communications, Defendants are further immune from Plaintiff's claims based on additional statutory immunities. First, RCW 43.101, which governs the Criminal Justice Training Commission and certification of peace officers, provides two **immunities in connection to CJTC decertification proceedings**. RCW 43.101.145 –"Written complaint by law enforcement or law enforcement agency to deny or revoke peace officer certification" – states "[a] person who files a complaint in good faith under this section is immune from suit or any civil action related to the filing or the contents of the complaint."

RCW 43.101.400 provides broader immunity to both the City and individual defendants.

6.    Every individual, legal entity, and agency of federal, state, or local government is immune from civil liability, whether direct or derivative, for providing information to the commission in good faith.

RCW 43.101.400(6). State law defines "good faith" as "a state of mind indicating honesty and lawfulness of purpose." *Morris v. Swedish Health Servs*., 148 Wash. App. 771, 777, 200 P.3d 261, 264 (2009).  *Bateman v. Children's Hosp.*, 103 Wash. App. 1058 (2000),

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

citing *Whaley v. State,* 90 Wn. App. 658, 669, 956 P.2d 110 (1998) (no evidence support a finding of a lack of good faith by pediatrician reporting concerns to CPS in the course of his professional responsibilities).

Defendants Arpin and Kleinknecht's involvement in the investigation documents originally sent to CJTC for possible investigation and decertification, and their testimony given at the CJTC hearing regarding Kivlin's decertification was done in good faith and in an effort to comply with the law and lawful requests from CJTC. *See, Declarations of Arpin and Kleinknecht.* There is no evidence any actions taken by either of the individual defendants or any Bellevue Police Department employee were not taken in good faith, despite Kivlin's opinion or disagreement.  See, E.g., Dkt. 1-1, ¶¶4.33, 4.44-4.49.

Second, to the extent Plaintiff's claims may be based on release of information in response to **requests made pursuant to the Public Records Act**, RCW Ch. 42.56 (Dkt. 1-1, ¶5.5) both the City and individual defendants are immune from such claims. *See*, RCW 42.56.060 (No public agency, public official, public employee, or custodian shall be liable, nor shall a cause of action exist… based upon the release of a public record if the public agency, public official, public employee, or custodian acted in good faith in attempting to comply with the provisions of this chapter). *See*, Dkt. 1-1, ¶¶4.48, 5.2-5.7, 6.2-6.5, 7.2-7.4, 9.6.

Finally, though unsupported by evidence, Plaintiff's claims theorizing that Defendants may have provided negative references to potential employers, such claims are barred by **immunity provided pursuant to RCW 4.24.730** (disclosure of employee information to **prospective employer**). See, Dkt. 1-1, 4.49, 5.5, 7.2-7.4. 9.6, 11.6.

**D.**   **Plaintiff Cannot Establish an Actionable Claim for Wrongful Discharge in Violation of Public Policy.**

Kivlin alleges "wrongful discharge" in violation of a "public policy" set forth in RCW Ch. 41.12. Dkt. 1-1, ¶8.4, 8.7. This claim is based on an allegation that Kivlin was purportedly not afforded a pre-termination hearing prior to being "involuntarily constructively discharged" "without cause." *Id*. This tort action is a "narrow public policy

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

exception' to the at-will employment doctrine that balances the employee's interest in job security and the employer's interest in making personnel decisions without fear of liability" and may arise only when employees are fired for: (1) refusing to commit an illegal act; (2) performing a public duty or obligation, such as serving jury duty; (3) exercising a legal right or privilege, such as filing workers' compensation claims; and (4) in retaliation for reporting employer misconduct, *i.e.*, whistleblowing. *See*, *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC,* 171 Wash. 2d 736, 756, 257 P.3d 586, 595 (2011) (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wash.2d 931, 936, 913 P.2d 377 (1996)). Kivlin's employment circumstances do not fit any of these categories and thus his claim necessarily fails.

### a.  Kivlin Was Never Discharged by the Bellevue Police Department.

First, Kivlin was never discharged; it is undisputed that he resigned. App. A, ¶¶3.21, 3.23. He is collaterally estopped from arguing otherwise. "A resignation is presumed to be voluntary, and it is incumbent upon the employee to introduce evidence to rebut that presumption." *Sneed v. Barna,* 80 Wn. App. 843, 849, 912 P.2d 1035 (1996)).

Kivlin claims he was "constructively discharged," which requires proof of: (a) "a deliberate act by the employer that made [the] working conditions so intolerable that a reasonable person would have felt compelled to resign;" and (b) the employee "resigned because of the conditions and not for some other reason." *Washington v. Boeing Co.,* 105 Wn. App. 1, 15, 19 P.3d 1041 (2000) (*citing Sneed).* Such intolerable conditions consist of a "continuous pattern of discriminatory treatment" or other "aggravating circumstances." *Id*. at 850. "An employee's frustration ... is not enough." *Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131, 149, 265 P.3d 971 (2011); *Reed v. City of Asotin*, 917 F. Supp. 2d 1156, 1165 (E.D. Wash. 2013) (Plaintiff failed to establish constructive discharge absent evidence that treatment by the Police Department was *discriminatory* in nature). Though the City had sufficient grounds to terminate Kivlin, it is undisputed he chose to resign before it ever did.

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 18
2:20-cv-00790 RSM
1120-00010/542584.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

    b. *Plaintiff Cannot Establish a Termination Would Have Been Without "Just Cause."*

Kivlin claims he was wrongfully discharge in violation of public policy, which requires proof of four elements:

> "(1) The plaintiffs must prove the existence of a clear public policy (the *clarity* element); (2) The plaintiffs must prove that discouraging the conduct in which they engaged would jeopardize the public policy (the *jeopardy* element); (3) The plaintiffs must prove that the public-policy-linked conduct caused the dismissal (the *causation* element) ;(4) The defendant must not be able to offer an overriding justification for the dismissal (the *absence of justification* element)."

*Roe*, 756, (quoting *Gardner*, at 941). *See*, Dkt. 1-1, ¶8.1-8.7.

Even assuming Kivlin had been terminated, he is collaterally estopped from claiming "just cause" did not exist for such a decision. *See, Billings v. Town of Steilacoom*, 2 Wash. App. 2d 1, 29, 408 P.3d 1123, 1138 (2017) (police officer collaterally estopped from establishing third or fourth element of public policy discharge claim where arbitrator found he engaged in misconduct sufficient to establish "just cause" for termination); *Brownfield v. City of Yakima*, 178 Wash. App. 850, 869-70, 316 P.3d 520 (2014) (police officer was unable to establish the third element, causation, when a prior summary judgment ruling determined the officer was terminated for insubordination, which establishes "just cause").

Here, the CJTC conclusively established that Kivlin *did* engage misconduct, that such conduct would have properly led to his termination if he had not first resigned, and that the conduct was also criminal in nature and disqualified him from serving as a police officer anywhere in the state. *See, App. A, B.* Thus, Kivlin cannot argue material facts are in dispute as to the *actual cause* of his alleged termination (constructive or not); it was his own established misconduct. Nor can he dispute the Bellevue defendants would have had an overriding justification for terminating his employment: misconduct that violated BPD policies, criminal laws, and constituted "disqualifying conduct" under RCW Ch. 43.101. *Id.*

If any doubt as to application of collateral estoppel remained, the underlying evidentiary record directly supports the same conclusion as that reached by the CJTC.

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

**E.  Plaintiff's State Constitutional Claims Should be Dismissed a Matter of Law.**

Kivlin also asserts claims based on Article 1, Sections §3 (due process), §7 (privacy) and §12 (equal protection) of the Washington State Constitution. It is well-established that no cause of action for damages exists arising from alleged violations of the State constitution and such claims are routinely dismissed as a matter of law. *See, Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001), *rev. den.* 146 Wn.2d 1021 (2002).[15] Federal courts routinely dismiss such claims. *See, e.g.*, *Rorvik v. Snohomish Sch. Dist.*, at *6 (W.D. Wash. 2018), *app. dism.*, 2018 WL 7575588 (9th Cir. 2018) (no cause of action for school violation of student's right to privacy under Washington Constitution). [16] Kivlin's claims should be dismissed here.

**F.  Plaintiff's Federal §1983 Claims Should be Dismissed as a Matter of Law.**

Plaintiff cannot establish a violation of his Constitutional rights, nor that any such allege violation was caused by an unconstitutional policy, practice, or custom of the City of Bellevue such that he could establish a right to recovery under 42 U.S.C. §1983. *See, Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).* Defendants Arpin or Kleinknecht are also entitled to qualified immunity.

1.   Plaintiff Cannot Establish any 14th Amendment Due Process Claim.

As an initial matter, Kivlin cannot prevail on *any* due process claim because he voluntarily resigned. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (No deprivation of property or liberty interest where police commander voluntarily resigned, chose retirement date, and forewent opportunity to challenge internal investigation).  A public employee is entitled to due process protection only if the employee's *termination* includes the publication of stigmatizing charges. *Mustafa v. Clark*

---

[15] See also, *Sys. Amuse., Inc. v. State*, 7 Wn.App. 516, 517, 500 P.2d 1253 (1972) (acts that violate constitutional protection may be declared void, but state constitution does not provide a private cause of action); *Spurrell v. Bloch*, 40 Wn.App. 854, 860–61, 701 P.2d 529 (1985) (no cause of action for abuse of governmental position or due process violation of state constitution).

[16] See also, *Jackson v. Asotin Cty*., 2019 WL 1245786, at *3 (E.D. Wash. Mar. 15, 2019) (no cause of action for search and seizure violating State Constitution); *Lewis v. Soc'y of Coun.l Rep. Acc. Pers.*, 2013 WL 6513009, at *5 (W.D. Wash. 2013) (no cause of action for "vindicating rights conferred by the state constitution"); *Saade v. Dept. of Health*, 2019 WL 4464401 (W.D.Wash. Sept. 18, 2019) (12(b)(6) dismissal).

DEFS' MSJ DISMISSAL OF PLTF'S COMPLAINT - 20
2:20-cv-00790 RSM

1120-00010/542584.docx

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Cty. Sch. Dist.,* 157 F.3d 1169, 1179 (9th Cir.1998). To prove that claim, the "employee must show that '(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) **the charge is made in connection with termination of employment**.' "*Id.* (citing *Matthews v. Harney Cnty.,* 819 F.2d 889, 891-92 (9th Cir.1987)) (emphasis added).

Plaintiff's Complaint concedes he sent notice of his intent to resign effective August 2, 2018 "on or about July 6, 2018,", and that Assistant Chief Arpin accepted on or around July 31st. Dkt. 1-1 at ¶ 4.23, 4.31. Kivlin's notice came 18 days prior to the Notice of Intent to Terminate his employment, and 17 days prior to Investigator Weber issuing her report. *Freeman Dec, Ex. A* pp. 228, 85-105. He never requested to rescind his resignation or pursue a *Loudermill* hearing to oppose the proposed disciplinary action; rather, he resigned. Therefore, he is barred from pursuing any due process claim against Defendants.

### a.  *Plaintiff Cannot Establish a Procedural Due Process Claim.*

Kivlin's procedural due process claim is based on an allegation that he did not receive notice and opportunity to be heard *before* the City completed its internal investigation and issued a Notice of Intent to Terminate. Dkt. 1-1, at ¶ 9.3. Courts in this circuit have rejected this argument in similar circumstances.

In *Mustafa, supra.*, the plaintiff argued his employer violated his due process rights when it suspended him without pay based on allegations by a student he engaged in "Open and Gross Lewdness" without first meeting with him to discuss the allegations. 157 F.3d 1169, 1172,1177 (9th Cir.1998). *Citing Gilbert v. Homar*, 520 U.S. 924, 117 S. Ct 1807 (1997), the *Mustafa* court agreed that the purpose of a pre-disciplinary hearing would be to assure that there are reasonable grounds to support the suspension, which was fulfilled "by the arrest and filing of charges" and a subsequent hearing. *See also, Reiber,* at 1102 (no requirement to provide hearing or evidence before placing employee on unpaid leave or proposing discipline/termination).

Kivlin's procedural due process claim fails for several reasons. First, it is

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

undisputed that Ms. Weber attempted to interview Kivlin on June 12, 2018 to "get his side of the story," but that Kivlin cancelled the day of the interview, reporting that he was "indefinitely*"* unable to participate in the interview. App. A, ¶3.20. No constitutional principal requires a Department to indefinitely hold an employee on paid administrative leave because he refuses to meet with an investigator or because criminal charges may be separately pending.  Further, the investigator's findings, on which the Notice of Intent to Terminate was based, were only related to allegations that *could not be refuted even with testimony from Kivlin*.  *See* Ex. A to *Freeman Dec.*, pp. 85-105. The additional allegations in the Notice of Intent to Terminate were similarly well-supported.  *Id.*, pp. 219-228.[17]  It has been established by the CJTC findings that the basis for the proposal to terminate Kivlin's employment was not "baseless or unwarranted."  *See also*, App. A, B.

Finally, prior to actually imposing any discipline, Kivlin was notified he had the right to request a *Loudermill* hearing to contest the allegations. *Id.* at p. 228. Instead, the City was encouraged by Kivlin's Guild representatives to accept the resignation he had offered rather than moving forward with termination proceedings. *See, Chinn Dec.* It is undisputed Kivlin thereafter resigned from his employment and was never actually disciplined or terminated by the BPD. He never requested a hearing from BPD after that.

### a.   Substantive Due Process – Deprivation of a Property Interest.

Even a terminated employee's "constitutionally based liberty interest" is limited to allowing him an opportunity for "clearing his name when stigmatizing information regarding the reasons for the [discipline] is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir.2004) (*citing Bd. of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). However, plaintiff who fails to request a name clearing hearing is precluded from asserting a substantive due process claim on an injury to reputation theory. See, *Reiber* 918 F. Supp. 2d at 1102.  Further, participation in a post-discipline proceeding,

---

[17] For example, Allegation 1 regarding criminal acts for unlawful contact with Ms. Schneider was supported by judicial determinations of probable cause to arrest him for those actions. *Id.* at 229-241. Kivlin also admitted that he contacted her in violation of a protective order in his CJTC testimony. *Id.*, at 1051-1052.

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

such as a grievance arbitration satisfies the "name-clearing" hearing requirement as a matter of law. Id., at 1102-1103, *citing*, *Mustafa,* 157 F.3d at 1179. Thus, his substantive due process claim necessarily fails.

Additionally, to the extent Kivlin may be unable to obtain a job in his "profession," law enforcement, it is because he was decertified by separate state agency, the CJTC, which made independent findings regarding Kivlin's conduct based on substantial evidence. *See*, App. A, B. This agency, which governs certification of all peace officers in the State of Washington, decided Kivlin had forfeited the right to be a police officer in this state after conducting a full hearing on the merits of his conduct. Kivlin is collaterally estopped from arguing he did not commit misconduct which resulted in his decertification, or that it was not severe enough to warrant either decertification or termination. The Bellevue defendants did not "destroy [Kivlin]'s freedom to take advantage of other employment opportunities." They have no control or authority over the CJTC.

Further, Kivlin admits he was offered a job at another police department and had other potential opportunities after he resigned from the BPD, but that they would not hire him because his ACCESS certification had been revoked by the Washington State Patrol ("WSP"), another State agency. *See*, Ex. D to *Freeman Dec*., Ex. D (Kivlin Email to Kateri Candee). This was prior to Kivlin's decertification by CJTC but long after the internal investigation and proposed termination at the BPD. Dkt. 1-1 at ¶ 4.12, ¶ 4.13. None of these events were an apparent bar to Kivlin being hired by law enforcement agencies.

2.   Plaintiff Cannot Establish an Equal Protection Claim.

Kivlin claims his employment was handled "differently" than two other BPD officers who he alleges engaged in similar conduct. Dkt. 1-1, ¶10.2-10.6. Kivlin's equal protection claim that he was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on *membership in any particular class*, is not cognizable in the public employment context. *Nickler v. Cty. of*

KEATING, BUCKLIN & MCCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423

*Clark*, 752 F. App'x 427, 429 (9th Cir. 2018).[18]

        3.      <u>Individual Defendants Are Entitled to Qualified Immunity from Plaintiff's ¶1983 Claims.</u>

Even assuming a viable constitutional issue, Plaintiff's §1983 claims against individual Defendants Arpin and Kleinknecht must be dismissed unless he establishes that "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] condut to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). Each defendant can be liable under § 1983 only if he caused or was *personally* involved in the alleged constitutional deprivation. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.2002). The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994).

**G.    The Court Should Award Costs and Reasonable Attorney Fees for Plaintiff's Pursuit of Frivolous and/or Unsubstantiated Claims.**

Plaintiff filed this lawsuit in April of 2020, knowing the CJTC had already revoked his certification. Dkt. 1-1. Despite multiple warnings that Defendants would seek to recover costs and fees if Plaintiff continued to proceed with claims clearly barred by collateral estoppel, immunities, and privileges, and the Superior Court's December 2020 Order affirming the CJTC Findings and Conclusions and confirming Kivlin received due process, Plaintiff persists with all claims. *Id.* Thus, the court should award costs and reasonable attorney fees pursuant to RCW 4.84.185 and 42. U.S.C. §1988 for the time and expense of transcribing the hearing and preparing this motion.

## VI.    CONCLUSION

Based on the foregoing, the court should dismiss Plaintiff's Complaint as a matter of law and award costs and reasonable attorney fees to Defendants.

---

[18] *See also, citing Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 594, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008); *see also Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012); *See also, Reiber v. City of Pullman*, 613 F. App'x 588, 592 (9th Cir. 2015).

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

DATED:  April 22, 2021

KEATING, BUCKLIN & McCORMACK, INC., P.S.


By: */s/ Jayne L. Freeman*
    Jayne L. Freeman, WSBA #24318
*Attorney for Defendants City of Bellevue,*
*Patrick Arpin, and Carl Kleinknecht*

801 Second Avenue, Suite 1210
Seattle, WA  98104
Phone: (206) 623-8861
Fax:     (206) 223-9423
Email: jfreeman@kbmlawyers.com

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE:  (206) 623-8861
FAX:  (206) 223-9423

# CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorneys for Plaintiff**

Patricia S. Rose, WSBA #19046
PATRICIA S. ROSE EMPLOYMENT LAWYER
P.O. BOX 31892
Seattle, WA 98103
Telephone: (206) 622-8964
Facsimile: (206) 694-2695
Email: patty@pattyroselaw.com

DATED: April 22, 2021

/s/ Jayne L. Freeman
Jayne L. Freeman, WSBA #24318
*Attorney for Defendants City of Bellevue,
Patrick Arpin, and Carl Kleinknecht*
801 Second Avenue, Suite 1210
Seattle, WA 98104
Phone: (206) 623-8861
Fax: (206) 223-9423
Email: jfreeman@kbmlawyers.com

KEATING, BUCKLIN & McCORMACK, INC., P.S.
ATTORNEYS AT LAW
801 SECOND AVENUE, SUITE 1210
SEATTLE, WASHINGTON 98104
PHONE: (206) 623-8861
FAX: (206) 223-9423