THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN M. KIVLIN,

                    Plaintiff,

    v.

CITY OF BELLEVUE, A municipal
corporation, and PATRICK C. ARPIN, and
CARL KLEINKNECHT, JOHN DOES
NOS. 1 to 2 in their individual and official
capacities,

                    Defendants.

No. 2:20-cv-00790 RSM

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**CORRECTED**

Respectfully submitted this 11th day of May, 2021.

LAW OFFICE OF PATRICIA S. ROSE

*s/Patricia S. Rose*
Patricia S. Rose, WSBA #19046
Attorney for Plaintiff
3417 Evanston Avenue North #523
Seattle, Washington 98103
Telephone:  (206) 622-8964
Facsimile:  (206) 694-2695
Email:  patty@pattyroselaw.com

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-1
2:20-cv-00790 RSM

1

2

## I.     INTRODUCTION

In the summer of 2018, John Kivlin, a career Traffic Division officer of the

Bellevue Police Department (hereinafter "BPD" or "the Department"), was subject to an

extensive internal employment investigation and charged by King County with serious

criminal conduct. The allegations arose from frivolous, unsubstantiated allegations of

physical and sexual assault made by a woman named Idunn Schneider. In the fall of 2017,

he and Ms. Schneider began a consensual extramarital sexual relationship that continued

during the period from mid-September 2017 to late April 2018. After Mr. Kivlin ended

their relationship, Ms. Schneider made numerous defamatory allegations about Mr. Kivlin's

on-and off-duty conduct in a successful attempt to end his career with BPD. Their referral

to the State's Criminal Justice Training Commission (hereinafter "CJTC") resulted in a

decertification process that has precluded his ability to serve as a certified peace officer

virtually anywhere.

After BPD participated in and publicized his arrest on April 28, 2018, BPD

management placed Mr. Kivlin on indefinite administrative leave while the criminal

investigation proceeded. From April 28 to July 24, BPD departed from its typical practice

and actively pursued an internal investigation relying primarily on the allegations from Ms.

Schneider, and issued four written advisements of distinct charges of investigation based on

alleged policy and/or conduct violations culminating with a July 24 Notice of Intent to

Terminate. Knowing that Mr. Kivlin was under severe emotional distress and facing

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-2
2:20-cv-00790 RSM

criminal prosecution on her bogus criminal charges which had resulted in substantial media attention throughout the region, BPD placed Mr. Kivlin in the Hobson's choice of potential violation of his 5th Amendment rights or losing his career for not cooperating with the internal investigation. Faced with this choice, a reasonable person would do as Mr. Kivlin did. He gave notice that he wished to separate from the Department on July 6, 2018. He did so before final completion of the investigation to avoid further embarrassment, humiliation and invasion of his family's privacy, and after union leadership advised, even without his involvement, that BPD was finalizing its proposed discipline and that a termination recommendation was imminent. After its receipt on July 24, in King County jail where Mr. Kivlin was detained on further false allegations, Mr. Kivlin nonetheless sought a *Loudermill* hearing when his resignation was not accepted at the time he was provided the Notice of Proposed Termination. After his *Loudermill* hearing request, Assistant Chief Patrick Arpin accepted his resignation effective August 2, thereby preventing his exercise of his procedural due process right for an opportunity to respond to the allegations and other post-termination relief under his collective bargaining agreement and/or the City's internal dispute resolution procedures.

Months after his separation, in October 2018, King County abandoned its criminal prosecution as Ms. Schneider's claims were wholly discredited. Nonetheless, *on June 18, 2019, just under a full year after Mr. Kivlin left BPD and more than six months after his exoneration, the State of Washington Criminal Justice Training Commission issued three charges against him arising primarily from his interactions with Ms. Schneider.* There was no true identity of issues between the proposed separation allegations and the charges raised

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-3
2:20-cv-00790 RSM

by the Commission and Ms. Schneider had fled the jurisdiction after the King County

Prosecuting Attorney charged her with cybercrimes such as "spoofing" the allegations

made against Mr. Kivlin. Although he did not prevail before the CJTC, the statutory and

common law claims raised in Mr. Kivlin's civil litigation are not subject to collateral

estoppel and are not subject to summary judgment because of alleged absolute immunities

and defenses.

## II.    EVIDENCE RELIED UPON

Plaintiff relies upon the testimony and evidence contained in the statement of facts

*infra,* the Declaration of John Kivlin and exhibits thereto, the Declaration of Bryce Corey

and exhibit thereto, the Declaration of Patricia S. Rose and exhibits thereto, and any cited

evidence contained in Defendant's Motion and/or Reply, if any, including documents and

evidence submitted to the State of Washington Criminal Justice Training Commission

proceedings which are attached as Exhibit A to the Freeman Declaration accompanying

Defendant's motion (Dkt No 16 P) and will be referenced by the Bates numbering provided

by Defendants, e.g., Dkt 16-1, Ex. A 0000.

## III.    STATEMENT OF FACTS[1]

### A.    Kivlin's Employment History with the Bellevue Police Department And His Personal and Professional Reputation

Petitioner John Kivlin (hereinafter "Kivlin") had been employed by the Bellevue

Police Department for sixteen years at the time of the events leading up to submittal of his

---

[1] This statement of facts is based on the evidence identified in Section II above, Defendants' pleadings and other pleadings already on file in this matter.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-4
2:20-cv-00790 RSM

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

resignation on July 6, 2018. That resignation was accepted on July 31, 2018 and was intended to be effective on August 2, 2018.. For much of that time he was a motorcycle officer or traffic officer assigned to the Traffic Division. In early February 2018, after testing, he was reassigned to the role of Collision Investigator and taken off the Motors and Traffic Unit. *Id.* at Ex A. 0000. During his employment, he had a reputation as an honest, reliable employee who was consistently willing to provide support to his peers and chain of command.

During the time period at issue in this case, i.e., November 2017 through his separation from work, Kivlin reported directly to then Captain David Sanabria and Sergeant Michael Shovlin. During this period, neither his peers, e.g., Welty, nor their supervisors or others in the chain of command entertained any doubts or concerns about any aspect of Kivlin's work performance, reliability and attendance, work ethic, honesty or truthfulness, or any other aspect of his employment before late April 2018. *See* Welty, Sanabria, Shovlin testimony in Dkt 16-1, Exhibit A, and Declaration of Bryce Corey accompanying this response at ¶7.

### B.    Relevant Events Leading to Kivlin's Resignation

At the time period relevant to this dispute, i.e., September 2017 through August 2018, Kivlin worked closely with a fellow officer, Robert Welty (hereinafter "Welty"). Both Kivlin and Welty resided in Gig Harbor and often commuted to work together, and both were reassigned to the Collisions Investigations unit at the same time. Welty Test. at _____.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-5
2:20-cv-00790 RSM

On April 28, 2018, false reports were made to the Department by Idunn Schneider, an individual with whom Kivlin had just ended a consensual extramarital affair. On that day, Idunn Schneider contacted the Department and made a false report to the Department that several weeks earlier Kivlin had physically assaulted her and struck her in the face. Dkt 16-1 Ex A_____.[2]

Ms. Schneider's action led to Kivlin's immediate arrest and incarceration at approximately 1:00 a.m. on April 28, 2018. He was immediately placed on administrative assignment or leave with pay by the Department while its management initiated an internal investigation. See Kivlin Declaration accompanying this response at ¶___ (hereinafter "Kivlin Dec."). The internal investigation ultimately included the May 2018 retention of an external investigator, attorney Kathleen Weber of the law firm Inslee Best Doezie and Ryder, P.S. See CJTC Exhibit 18, Dkt 16-1, Ex A 000085-00199 It also led to the filing of mutual protection orders between Schneider and Kivlin's family and other unsubstantiated criminal charges directed at Kivlin's conduct during the period from May 2018 through November 2018. See Kivlin Dec. (passim).

At the time that he entered into the relationship with Ms. Schneider, Kivlin was not aware that she had a prior history of making unsupported allegations of physical and sexual assault against others including law enforcement officers, or that she had a prior history of suicide threats and mental health treatment including involuntary commitment. This continued during the period at issue here. See Kivlin Dec., Exs. ____.   Additionally,

---

[2] Ms. Schneider also reported that Kivlin had run her license plate through a statewide database referred to as ACCESS to obtain information about her.

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

during the internal investigation of Kivlin, it was revealed that, contemporaneous with her allegations against Kivlin, Ms. Schneider had made similar claims against another BPD Detective and also against Bellevue Police Chief Steven Mylett that were proven false. See Kivlin Dec. at ¶___.

It is undisputed that during the early months of their relationship, the woman now known to be Idunn Schneider deliberately lied to Kivlin and disguised her true identity by providing a false first name and false age to Kivlin. *Id*. at ¶9,_She also misled him as to her profession, her children, and other details about her life. Within a month of their interaction, Kivlin began to have doubts about the veracity of her statements to him. Nonetheless, he continued to see her and confront her about her statements to him, both in person and in a voluminous number of text messages that they exchanged. Ultimately, Kivlin learned that her name was not "Hannah" and that she was almost twenty years older than she had indicated to him. Because of his suspicions, on several occasions Kivlin used the ACCESS database available to law enforcement personnel to research her license plate.  See  Kivlin Dec. at ¶10. He advised her that he was doing so. *Id.*

Kivlin attempted to end the relationship with Ms. Schneider on several occasions and formally did so after his spouse learned of the affair. Not surprisingly, Kivlin's disclosure created an immediate rift in his marriage. As a result, he moved out of their residence but remained in the Gig Harbor area to be near his children.  *Id*. at ¶11.  Despite this, shortly thereafter he learned that Ms. Schneider had made a 911 call indicating that she was traveling to his residence and intended to kill him and "commit suicide by cop." Kivlin Dec. at ¶12___ and Ex. _____.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-7
2:20-cv-00790 RSM

On April 30, 2018, the day that Kivlin was arraigned, he also learned that Ms. Schneider had alleged he had violated the no-contact order, escalating the matter to a felony due to the nature of the reported threats. On or about May 4, 2018, Ms. Kivlin learned that Ms. Schneider had been seen near his new residence and his family's residence and ultimately was detained very close to both by law enforcement and placed on a 72-hour involuntary commitment hold because of her statements and disoriented presentation. *Id.* at¶14-15 Ex.5.

### C.      The Department's Internal Investigation

Following the BPD's initial placement of Kivlin on administrative assignment, he never returned to work. Additionally, charges were made by mid-May and a contracted lawyer/investigator, Kathleen Weber, was retained in mid-May 2018 to follow up on the increasing allegations made by her.  Kivlin Dec at ¶17.   During May and July 2018, Kivlin was placed under arrest and detained in jail a total of three times because of repeated false statements made by Ms. Schneider to law enforcement about his alleged violation of the no-contact orders, threats, and intimidation when the record reveals that it was she who was engaged in this conduct. Kivlin Dec. at ¶18. He also received four separate Notices of Advisement of Formal Standards Investigations being conducted by BPD. *Id.*  and Exs. 8-11. ¶

With his marriage crumbling, his work life in jeopardy, and facing criminal charges, Kivlin was not emotionally or legally prepared to be interviewed during the internal investigation in mid-June 2018 and he cancelled an appointment for such an interview. No

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-8
2:20-cv-00790 RSM

effort was made to reestablish an interview time before the investigation was completed on or about July 23, 2018. See Dkt No. 16-1, CJTC Exhibit 10, Ex. A**.**

Based on his long tenure with BPD and conversations with his union, Kivlin believed that the Department's policy and practice was to maintain a BPD employee involved in a criminal investigation on leave status until the criminal investigation and/or prosecution  was complete. Kivlin Dec. at¶15. This understanding is reinforced by language in the Union contract. *Id*. at Ex.4  and the testimony of former Union official Bryce Corey. *See* Corey Dec. at ¶6.

The investigative report was completed and submitted on July 23  contained no formal recommendations for disciplinary action and was not provided to Kivlin,   Unaware of the status of the investigation prior to its completion and well before the Department's issuance of written notice of proposed termination, Kivlin resigned his position on July 6, 2010. Kivlin Dec. at  Ex11. He did so to avoid further stress and impact on his family because of unsolicited press coverage regarding the events leading to his investigation, and because he understood that the decision would stop the internal investigation and limit the reputational harm flowing from his discharge. Nonetheless, on July 9, while in jail, he received a final, fourth Advisement of  Formal Standards Investigation after he indicated his intent to resign on July 6  *See* Ex.11 to Kivlin Dec.

### D.    End of Kivlin's Employment, Subsequent Charges before the Commission, and Criminal Charges

After receipt of the final notice of Intent to Terminate, he promptly asked for a *Loudermill* hearing in writing even though he was still incarcerated. *Id.* Without any

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

acknowledgment of that request, Acting Chief Arpin simply "accepted" his resignation effective August 2, 20l8.  See Kivlin Dec. at  Ex.14.

Between June and August 2018, Kivlin was charged by the King County Prosecuting Attorney with several criminal charges including assault, tampering with a witness, and violation of a protection order. Those charges were dismissed with prejudice after forensic evidence revealed that Ms. Schneider had "spoofed" and created false evidence regarding her interactions with Kivlin as well as against Chief Mylett. Kivlin Dec., Ex. 15. She was later charged with malicious prosecution and tampering with physical evidence but she left the country before she could be apprehended or prosecuted. See Kivlin Dec, ¶22,

E.     **Deficiencies in the Administrative Proceedings Before the CJTC**

On August 2, 2018, the exact day of his resignation, defendant Kleinknecht referred Kivlin to the CJTC. Dkt 16-1, Ex A 000057.   Close to a year after the criminal charges were dismissed and after his resignation from BPD, on June 24, 2019 CJTC issued three charges that could be the basis for decertification as a police officer under RCW 43.101 *et seq.*  Dkt 16-1, Ex A, p. 000010-11. The alleged factual basis for the charges, in summary, were: unauthorized use of the ACCESS database for non-law-enforcement purposes; misrepresenting his need for sick leave on November 22, 2017 to have a rendezvous during work hours with Ms. Schneider; and misrepresenting his availability for an off-duty callout for investigation of a fatality accident on February 19, 2018 to rendezvous with Ms. Schneider. *Id.*

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-10
2:20-cv-00790 RSM

Kivlin timely appealed and retained counsel. A three-person panel composed of several law enforcement management and a professor of criminal justice was convened to hear the appeal. Both the Commission staff prosecuting the appeal and the panel hearing the appeal were represented by Assistant Attorney Generals. Dkt 16-1, Ex. A, passim.

There were no line officers or detectives or other peers of Kivlin on the panel. Unlike a judicial proceeding, none of the panel members, including Presiding Officer Sean Madison of the Sequim Police Department, had substantive legal training, so an Assistant Attorney General was assigned to assist him in making evidentiary and legal decisions and preparing all the pleadings and decisions of the panel both at pre-hearing conferences and during the hearing itself. *Id.* See e.g. _____

In a pre-hearing conference conducted on December 4, 2019 to review proposed exhibits and witness lists of both parties, Presiding Officer Madison refused to admit Kivlin's proposed exhibits that contained relevant documentary evidence to rebut hearsay evidence from BPD's internal investigation documents, many of which contained prejudicial and inaccurate statements attributed to or based on Ms. Schneider's false allegations regarding him and that were not even the basis of the charges made by the CJTC. Id. at Ex A, p. 0000___. Specifically, Sgt. Madison refused to admit Kivlin's exhibit which was a series of documents related to Ms. Schneider's past history of false allegations of sexual assault. *See* Exhibit 2 to Kivlin Dec. Sgt. Madison also refused to admit Kivlin's exhibit that demonstrated conduct of Ms. Schneider contemporaneous with the period when she made allegations against Kivlin that led to his placement on administrative leave as well as the criminal charges. See Kivlin Dec. Ex. 7. Sgt. Madison

also prevented Kivlin's attempt to admit evidence that he was advised by administrators of the ACCESS  program that he was not  permanently barred from use of its databases but would need to renew his training consistent with their customary practice upon reemployment in criminal justice field. *See* Kivlin Dec. at Ex 16.  Most important, Kivlin had no opportunity to impeach Ms. Schneider based on the numerous defamatory allegations she made regarding him and that formed the nucleus of the BPD investigation and/or allegations leading to his separation and the CJTC proceedings, all of which were provided in full to the panel. As result, although the panel did not sustain one charge, it order Mr. Kivlin's decertification based on the ACCESS violation and his communications regarding the call back/fatality accident despite evidence of disparate treatment of similarly situated officers on each charge. It is undisputed that those findings and conclusions were upheld on judicial review to King County Superior Court and have not been further appealed,

### F.        Procedural History of This Complaint

On April 28, 2020,  Kivlin filed this action in King County Superior Court two years after Defendant Arpin's communications regarding Plaintiff's arrest to KOMO TV and shortly before the City's subsequent issuance of a press release regarding the same event. After accepting service of the pleadings, and retention of counsel, on or about  May 27 2020,  Defendant removed the complaint to this Court.  Dkt No.1   The parties agreed to stay discovery until after submission of this anticipated motion which would turn on questions of primarily. Dkt No. 12. The Court granted this relief and rescheduled key deadlines in this  case. Dkt No. 14. This Motion followed. Dkt No. 15.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-12
2:20-cv-00790 RSM

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206) 694-2695 (F)
patty@pattyroselaw.com

1

2

3

## IV.    ISSUES PRESENTED

4    1.       Under federal and state common law of issue preclusion and/or collateral estoppel,

5    should Kivlin's complaint for damages be dismissed as a matter of law?

            Answer:        No.

6    2.       Under Washington common law of witness immunity, should Kivlin's complaint for

7    damages be dismissed as a matter of law?

            Answer:        No.

8    3.       Are there genuine issues of material fact in dispute as to elements of Kivlin's

9    defamation claim that preclude dismissal as a matter of law?

            Answer:        Yes.

10   4.       Are there genuine issues  of material fact in dispute as to elements of Kivlin's

     injurious falsehoods claim that preclude dismissal as a matter of law?

11           Answer:        Yes.

12    5.      Are there genuine issues of material fact in dispute as to elements of Kivlin's

13   light / invasion of privacy claim that preclude dismissal as a matter of law?

            Answer:        Yes.

14   6.       Are there genuine issues of material fact in dispute as whether Plaintiff  was

15   constructively discharged by the BPD that preclude dismissal as a matter of law?

            Answer:        Yes

16   7.       Are there genuine issues of material fact in dispute as to whether BPD wrongfully

17   discharged Kivlin in violation of promises of specific treatment in specific situations that

     preclude dismissal of this claim as a matter of law?

18           Answer:        Yes.

19   8.       Are there genuine issues of material fact in dispute as to whether BPD wrongfully

     discharged Kivlin in violation of  a clear mandate of public policy found in Article 1,

20   Section 7 of the Washington State Constitution that prelude dismissal of this claim as a

21   matter of law?

            Answer:        Yes.

22   9.       Are there genuine issues of material fact in dispute as to the individual defendants,

23   acting under color state law, violating Kivlin's constitutional rights under the 14th

     Amendment to the United States Constitution that preclude dismissal of Kivlin's claim under

24   42 US  §1983 as a matter of law ?

            Answer:        Yes.

25

26   PLAINTIFF'S RESPONSE TO
     DEFENDANT'S MOTION FOR
     SUMMARY JUDGMENT-13

27   2:20-cv-00790 RSM

                                           LAW OFFICE OF PATRICIA S. ROSE
                                           3417 Evanston Avenue North, #523
                                           Seattle, Washington 98103
                                           (206) 622-8964 (T); (206 )694-2695 (F)
                                           patty@pattyroslaw.com

# V.   ARGUMENT AND AUTHORITY

## A.   Summary Judgment Standards Appliable to This Case

On a motion for summary judgment, this Court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). *Miller v. Glenn Miller Prods., Inc.,* 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment *as a matter of law.* Fed. R. Civ. P. 56(a), *emphasis added*. The moving party must show *the absence* of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc*., 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court defers to neither party in resolving purely legal questions. *Bendixen v. Standard Ins. Co*., 185 F.3d 939, 942 (9th Cir. 1999). However, it is also not this Court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson, supra*.

## B.   Federal and State Law on Issue Preclusion Does Not Preclude Litigation of all of Kivlin's Claims Here

### 1.   Collateral estoppel is not intended to prevent a full and fair hearing on the merits of Kivlin's constitutional and common law claims when there are disputes as to some of the elements.

Federal courts "determine the preclusive effect of a state court judgment by applying that state's preclusion principles." *ReadyLink Healthcare, Inc. v. State Comp. Ins.*

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

*Fund,* 754 F.3d 754, 760 (9th Cir. 2014). *See Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 508 (2001). Aside from Kivlin's §1983 claim, on which both state and federal courts have jurisdiction, all of the claims here arise under Washington law. Thus, the court should apply Washington's common law of issue preclusion although it is similar to the federal common law. It is designed to prevent relitigation of issues already actually litigated by the parties and previously decided by a competent tribunal in order to promote judicial economy and convenience to parties. *See e.g., Hadley v. Maxwell,* 144 Wash.2d 306, 311, 27 P.3d 600 (2001). *Reninger v. Dep't of Corr.*, 134 Wash.2d 437, 449, 951 P.2d 782 (1998). The *Hadley* court recognized its limited utility:

> Collateral estoppel is, in the end, an equitable doctrine that will not be applied mechanically to work an injustice. To that end, we hold it is not generally appropriate when there is nothing more at stake than a nominal fine. There must be sufficient motivation for a full and vigorous litigation of the issue.

*Hadley, supra*,

"It is limited to the situation where retrial is not necessary if one or more of *the crucial issues or determinative facts [were]determined in previous litigation.*" *Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n*, 72 Wash.2d 887, 894, 435 P.2d 654 (1967), emphasis added. For this reason, "*collateral estoppel **is not** a technical defense to prevent a fair and full hearing on the merits of the issues to be tried.*" *Hadley, supr*a, 144 Wash.2d at 311, emphasis added. Thus, the central focus for this Court is "whether the parties to the earlier proceeding had a full and fair hearing on the issue [which the subsequent litigation addresses" *Id*. citing *Neff v. Allstate Ins. Co.*, 70 Wash.App. 796, 801, 855 P.2d 1223 (1993). Most important, the Court must determine whether the "party against whom the

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

estoppel is asserted [Mr Kivlin] had interests at stake that would call for a full litigational effort." *Hadley*, citing 14 Lewis H. Orland & Karl B. Tegland, *Washington Practice: Trial Practice, Civil* § 373, at 763 (5th ed.1996). Here, Kivlin has yet to have an opportunity to fully remedy the harm to his reputation caused by the BPD's adoption or ratification of Ms. Schneider's defamatory allegations.

Washington courts have developed a four-part test to analyze whether a previous litigation should have a collateral estoppel effect on a subsequent litigation. Collateral estoppel requires: "*(1) identical issues; (2) a final judgment on the merits;[3] (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied*." *Hadley*, *supra* at 311-12, emphasis added, quoting *Southcenter Joint Venture v. Nat'l Democratic Policy Comm'n*, 113 Wash.2d 413, 418, 780 P.2d 1282 (1989). Thus, application of collateral estoppel is generally limited to situations where, among other factors, the *issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceedi*ng*."* Here, neither the first nor second nor, critically, the fourth element have been met in applying the doctrine to the CJTC proceedings.

> ### 2.   *The* Wallace v. Island County *Case Does Not Control the Outcome of This Case.*

---

[3] Kivlin acknowledges that as he has not sought further review of the Superior Court's judicial review of the proceedings before the CJTC, that decision operates as a final judgment on the claim brought before the CJTC. However, the CJTC can hear a petition for recertification should Kivlin choose to petition for that relief in the future.

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

Defendants contend that he unpublished case of *Wallace v. Island County* controls the outcome here. *Wallace v. Island County, et all,*  No. C09–0823RSL, (W.D. Wash. 2011);  2011 WL 6210633 However, *Wallace* is distinguishable.. While Judge Lasnik did find that certain factual findings of the CJTC had preclusive effect on Deputy Wallace's §1983's cause of action alleging discharge for First Amendment activity, i.e., the ***motivation for*** his discharge, the CJTC decision had no impact on his analysis of  Wallace's common law claims.  *Id.* In fact, Judge Lasnik's separate analysis of the defamation and false light claim does apply here. Unlike Deputy Wallace, Mr. Kivlin has produced admissible evidence that "[Ms. Schneider's] story was false and that Defendants' [publication] of the story was the result of actual malice or reckless disregard." *Id.* Kivlin's §1983 claim does not implicate the motives for his discharge but addresses the procedures used. The reasons for disposing of Wallace's reputational harm claims are not present here nor are all the elements of Washington collateral estoppel present here.

### 1.    *The Issues before The CJTC Were Not Identical to The Issues before This Court*

Washington courts have not articulated a precise test to determine whether subject matter is identical, but "[t]he critical factors seem to be the nature of the claim or cause of action and the nature of the parties." *Marshall v. Thurston Cty*., 165 Wn. App. 346, 353 (2011) (quoting *Hayes v. City of Seattle*, 131 Wn.2d 706, 712 (1997)). As a result, Washington courts "*generally focus on the asserted theory of recovery rather than simply the facts underlying the dispute." Id. ,emphasis added.* Defendants' assertion of the identical nature of the claims is not well taken. While the CJTC did effectively find that

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

Kivlin resigned in lieu of discharge, and arguably supports a constructive discharge theory, the CJTC findings and conclusions do not address the two forms of wrongful termination claims made by Kivlin. They deal with 1) representations made by BPD as to the process to be used in evaluating the claims against him, i.e., the implied contract/breach of promises of specific treatment claim; and 2) whether Kivlin's termination contravened a clear mandate of public policy protecting individual privacy interests that are found in Article 1, §7 of the Washington State Constitution.

### 2. The Parties before the CJTC were not the same as the parties here.

There has been no showing that the State of Washington's interest in decertifying police officers guilty of misconduct is the same interest implicated by the City of Bellevue in defending this claim. Simply because some of the facts giving rise to the hearing arose from Kivlin's work history with the City does not make it a party to the administrative proceedings below. Indeed, many collateral estoppel decisions involving employment decisions involve a fired or disciplined employee's attempt to relitigate the cause of their dismissal or the alleged illegal motive for that final employment action. See e.g., *Christensen v. Grant County, et al.,* 152 Wash.2d 299 96 P.3d 957 (2004); *Reninger v. Dep't of Corr.*, 134 Wash.2d 437, 449, 951 P.2d 782 (1998); *Shoemaker v. City of Bremerton*, 109 Wash.2d 504, 507, 745 P.2d 858 (1987). Those do not apply here where the central focus of the proceedings is remedying the harm to Kivlin's reputation, and none of the evidentiary facts on those claims have been finally determined in the prior proceedings, as discussed *infra*.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-18
2:20-cv-00790 RSM

3.     ***Application of Collateral Estoppel Would
Cause Substantial Injustice to Kivlin's Ability
to Remedy the Reputational Harm Caused, in Part
by the Defendants' Actions And Inactions***

Courts have concluded that "an administrative decision may have preclusive effect on a subsequent civil action where the parties had ample incentive to litigate issues even though the remedies available in the two arenas were not identical." *Thompson v. Dep't of Licensing,* 138 Wash.2d 783, 796, 982 P.2d 601 (1999). Kivlin has had no opportunity to date to address, litigate, or remedy the reputational harm caused by the events giving rise to this ligation and the Defendants' central role in it. This not a simple matter of remedy but a matter of access to justice

**C.     Plaintiff's Claims for Damages Are Not Barred by
Absolute Witness Immunity**

Defendants assert that because some of Kivlin's common law claims are related to damage to his reputation from statements made by one or more of the individual defendants and/or other agents of the BPD, those claims are wholly barred by witness immunity. See Defendants' Brief at pp. 10-11.  Kivlin *is not* seeking relief for any specific statements made under oath by Assistant Chief Arpin and/or Carl Kleinecht during the CJTC two-day hearing and concedes that such testimony is absolutely privileged. Rather, he is seeking recovery for statements made by agents of the City of Bellevue regarding the reasons for his  arrest and separation from employment to members of the media and/or prospective employers that exceeded any conditional privilege it might have had. See Section D *infra.* Thus, the doctrine of witness immunity has no place in the present litigation.

**D.     There Are Genuine Issues Of Material Fact**

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

**In Dispute as to Kivlin's' Defamation
and Injurious Falsehoods Claims**

As other courts have recognized:

> The common law, developed over hundreds of years, has long recognized a
> remedy for damage to reputation from defamation. See Van Vechten Veeder,
> The History and Theory of the Law of Defamation, 3 Colum. L. Rev. 546,
> 547-61 (1903) (reviewing how early laws, including Roman, Christian,
> Germanic, and English law, protected a person's reputation); 1 William
> Blackstone, *Commentaries on the Law of England in Four Books* (1753)
> ("The security of his reputation or good name from the arts of detraction and
> slander, are rights to which every man is entitled, by reason and natural justice;
> since without these it is impossible to have the perfect enjoyment of any other
> advantage or right."). Significant litigation vindicating an individual's right to
> protect reputation emerged as early as the seventeenth century.

*Larson v. Gannett Co.*, 940 N.W.2d 120 (Minn. 2020). There is no dispute that Kivlin's

reputation has been damaged. It was damaged in significant part by his employer's

negligence and failure to investigate the reliability of Ms. Schneider's reports and her

veracity and history of false reporting before implementing the draconian internal

investigations over many months and not ensuring the accuracy of its agents' statements in

the events before and after Kivlin's arrest and eventual separation from work.

Under Washington law, a "defamation action consists of four elements: (1) a false

statement [about the plaintiff], (2) publication, (3) fault, and (4) damages." *Duc Tan v. Le,*

177 Wash.2d 649, 662, 300 P.3d 356 (2013). Generally, in defamation cases, "[t]he standard

of proof at trial also applies at summary judgment." *Wood v Battleground School District,*

107 Wash.App. 550, 557 27 P.3d 1208 (2001) [public employee states claim for defamation

and abuse of privilege by statements to the press that her work performance was "lacking."]

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

and citing *Haueter v. Cowles Publ'g Co.*, 61 Wash.App. 572, 581, 811 P.2d 231 (1991). The

*Wood* court noted:

> The trial court erred in concluding that there was not an issue as to whether Sharp's statement was false. Sharp's statement to the press implied there were provable facts to support his conclusion that Wood's performance as communications coordinator was lacking and it suggested that Wood's deficient job performance was the basis for her reassignment and/or for the decision not to renew her contract..... Further, Wood provided substantial evidence contradicting Sharp's evidence about the quality of her work, including a performance evaluation and the declarations of her supervisors and other staff. *Thus, reasonable persons could differ on the truth or falsity of Sharp's statement.* See *Wilson*, 98 Wash.2d at 437, 656 P.2d 1030.

> *Id.*

The *Wood* court reversed summary judgment on the issue of "falsity." *Id.* Here too

there is ample evidence of the falsity of the allegations of assault communicated by Chief

Arpin and other unknown agents of BPD in contact with the press and/or in the implications

left by failing to correct the record in information provided to prospective employers. A

plaintiff can allege the false statement prong by alleging facts that show the statement is

provably false or "leaves a false impression due to omitted facts." See *Yeakey v. Hearst

Commc'ns, In*c., 234 P.3d 332, 335. "Defamation by implication occurs when 'the

defendant juxtaposes a series of facts so as to imply a defamatory connection between

them.'" *Corey v. Pierce Cty.*, 225 P.3d 367, 373 (2010), other citations omitted.  It is for the

Court to  determines the "sting" of the report. "The 'sting' of a report is defined as the gist

or substance of a report when considered as a whole*. Herron v. King Broad*, 776 P.2d 98,

102 (1989). "Where a report contains a mixture of true and false statements, a false

statement (or statements) affects the 'sting' of a report only when 'significantly greater

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." *Herron, supra.* The *Wood* Court noted

> Sharp's statements to the press regarding Wood's reassignment and nonrenewal of her contract were true. But his reference to Wood's deficient performance added a distinctly different "sting," suggesting to a reasonable reader that the deficiency was the reason for the reassignment and nonrenewal. ...
>
> "A defamatory publication is libelous per se (actionable without proof of special damages) if it (1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." [citation omitted].  While a court generally determines whether a statement is libelous per se if the issue involves "the rather vague areas of public confidence, injury to business, etc.,"then it becomes a question of fact for the jury.... Whether Sharp's statement was libelous per se involves this more vague area of public confidence and injury to Wood's pecuniary interest and, thus, it is a question for the jury.

*Wood, supra,* other citations omitted.  As in *Wood*, a jury could conclude that the sting and implication of  Arpin's comments were that Kivlin did commit an assault and can make the decision of whether statement s were made with   reckless disregard  for the truth..

Defendants argue that Chief Arpin's statements to the press  on April 28 regarding Mr. Kivlin's arrest was simply a matter of opinion. Washington courts have recognized that "the line between fact and opinion is sometimes blurry...." *Dunlap v. Wayne*, 105 Wash.2d 529, 539, 716 P.2d 842 (1986). The Court must consider: "(1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Id.* Whether a statement is one of fact or opinion is a question of law unless the statement could only be characterized *as either fact or opinion*. *Id.* at 540 n. 2. Here, the gist of Assistant Chief Arpin' s statement to the press on April 28 is that Kivlin's arrest was justified and/or that he committed a serious infraction

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

warranting his arrest and probable guilt. Chief Arpin clearly had no personal knowledge of the alleged conduct and had no reason to make that statement. A jury could find that Assistant Chief Arpin's statement was not solely an opinion but a factual representation about Kivlin's character and behavior. The  comment implied directly that Kivlin had engaged in misconduct and was likely guilty of assaulting Ms. Schneider. He did so negligently as a reasonably prudent public official would have declined to comment on such a serious allegation knowing the consequences for Kivlin.

Defendants assert that as Kivlin's name was not mentioned, "statements that do not identify Kivlin by name are not actionable." This representation is a misstatement of the law. As the Washington appellate court stated in *Sims v. KIRO, Inc* "this is not to say that it is necessary that a plaintiff be mentioned by name in order to recover damages, but it is sufficient if viewers, hearers or readers will conclude from a perusal of the article that the plaintiff is the one against whom publication is aimed." *Id. citing Ryan v. Hearst Publications, Inc.,* 3 Wn.2d 128, 100 P.2d 24 (1940). As the *Sims* court noted, "[t]*he test is not whom the story intends to name but who a part of the audience may reasonably think is named....*" *Sims,* supra. Here, the comments made referred to a sixteen year veteran of the BPD;  only a handful of officers met that criteria. Coupled with the public record made by his arrest, Kivlin's identity could easily be discerned. Specifically, it could easily be correctly identified by those with whom he already had an unblemished reputation, e.g., his peers on the force and others in the greater law enforcement and/or professional community. Kivlin has already provided testimony that at least one prospective employer concluded that he had committed multiple felonies, a clearly defamatory statement. Summary judgment on

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

this element is premature as Kivlin should have a further opportunity to develop the record as to who has who received information about the untrue allegations made in the BPD investigation. Additionally, it is undisputed that public records responses containing defamatory information about Kivlin have already been made.

### 1.      *Washington should Adopt the Compulsory Self-Publication Doctrine*

Since his separation from employment, Kivlin has sought employment in a variety of settings using his investigatory skills and law enforcement background. *See* Kivlin Dec. at ¶¶s 3-4. In many of those instances, he had been required as a part of his application to disclose the circumstances of his separation from BPD and he sought a neutral or other reference from BPD. To date, he has not obtained such employment and has been informed that his truthful disclosures are inhibiting his ability to be considered for such employment, even when the underlying allegations have not been verified. *Id.* It is long overdue for Washington to recognize the applicability of the doctrine of compulsory self-publication in defamation and other reputational harm cases. It has been recognized by other courts.[4] *See e.g*., *Lewis v. Equitable Life Insurance Co*. 389 N.W.2d 876 (1986); *McKinney v. County of Santa Clara*, 110 Cal.App.3d 787, 168 Cal.Rptr. 89 (1980); *Colonial Stores, Inc. v. Barrett*, 73 Ga. App. 839, 38 S.E.2d 306 (1946); *Belcher v. Little*, 315 N.W.2d 734 (Iowa 1982); *Grist v. Upjohn Co*., 16 Mich.App. 452, 168 N.W.2d 389 (1969); *Bretz v. Mayer*, 1 Ohio Misc. 59, 203 N.E.2d 665 (1963); *First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696 (Tex.Civ.App.1980). These courts have recognized

---

[4] Kivlin acknowledges that Washington courts thus far have rejected application of this doctrine.

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

that if a defamed person is in some way compelled to communicate the defamatory statement to a third person, and if it was foreseeable to the defendant that the defamed person would be so compelled, then the defendant could be held liable for the defamation. Several courts have specifically recognized its applicability in the job search context. *See e.g. Lewis v. Equitable, supra*, *Grist v. Upjohn Co., supra.* As in those cases, it was completely foreseeable in this case that Kivlin would be forced to repeat the defamatory allegations to prospective employers, which has caused him significant economic and emotional harm. *See* Kivlin Dec at ¶¶s 3-4.

Kivlin can produce, and should be given the opportunity to further develop, evidence that is probative of any qualified privilege alleged by the individual defendants and/or the BPD. Even if a qualified privilege exists under the common law to speak to prospective employers, as indicated above, that can be rebutted by a showing that the statements were made with actual malice. Similarly any alleged immunity found in RCW 4.24.470 is premised on good faith and the "presumption of good faith ... [can be] rebutted upon a showing by clear and convincing evidence that the information disclosed by the employer was knowingly false, deliberately misleading, or made with reckless disregard for the truth." Questions of motive and good faith are issues for a jury, not this Court.

**E.   There Are Genuine Issues of Material Fact in Dispute as to Kivlin's Invasion of Privacy Claim under a False Light Theory**

Kivlin also states fact which support a viable false light/invasion of privacy claim.

Washington has adopted Restatement (Second) of Torts § 652E, recognizing invasion of privacy by false light as an independent claim. *Eastwood v. Cascade Broad. Co*., 106 Wash.2d 466, 471, 473-74, 722 P.2d 1295 (1986). Defamation and

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-25
2:20-cv-00790 RSM

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206) 694-2695 (F)
patty@pattyroselaw.com

invasion of privacy by false light are similar, yet distinct, causes of action. *See Eastwood*, 106 Wash.2d at 470-471, 722 P.2d 1295. Although both actions rest on the disclosure of false or misleading information, they require different elements and allow for recovery of different damages. *Duc Tan v. Le,* 177 Wash.2d 649, 662, 300 P.3d 356 (2013); *Eastwood,* 106 Wash.2d at 470-71, 722 P.2d 1295. ....
"The theoretical difference between the two torts is that a defamation action is primarily concerned with compensating the injured party for damage to reputation, while an invasion of privacy action is primarily concerned with compensating for injured feelings or mental suffering." *Eastwood,* 106 Wash.2d at 471, 722 P.2d 1295. A plaintiff does not need to be defamed in order to bring a false light claim, but any defamation action potentially gives rise to a false light claim. *Eastwood*, 106 Wash.2d at 471, 722 P.2d 1295.

*Sequist v. Caldier,* 438 P.3d 606 (2019). Thus, a false light claim arises when a

person publishes even truthful statements that place another in a false light if (1) the false

light would be highly offensive and (2) the publisher knew or recklessly disregarded the

falsity of the publication and the subsequent false light it would place the other in.

*Eastwood,* 106 Wash.2d at 470-471, 722 P.2d 1295; Restatement (Second) of Torts § 652E

(1977). Here, Kivlin has provided ample evidence that he was placed in a false light by the

statement of Assistant Chief Arpin and that Assistant Chief Arpin should have known the

impact of the publication of the statements attributed to him.

> **F.    There Are Genuine Issues of Material Fact**
> **in Dispute as to Kivlin's Claims for**
> **Constructive Discharge that Preclude Dismissal**
> **of this Claim as a Matter of Law**

> **1.    *Kivlin Has Established Factual***
> ***Dispute that Support the Elements***
> ***of Constructive Discharge***

In asserting the collateral estoppel effect of the CJTC proceedings and findings,

Defendant is forced to concede that Kivlin allegedly resigned in lieu of discharge. That is

not because he would have inevitably been discharged but because of the intolerable

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

conditions he faced. The elements of a claim of constructive discharge are that (1) the

employer deliberately made working conditions intolerable, (2) a reasonable person in the

employee's position would be forced to resign, (3) the employee resigned because of the

intolerable condition and not for any other reason, and (4) the employee suffered damages

as a result of being forced to resign. *Peiffer v. Pro-Cut Concrete,* 6 Wn. App. 2d at 829, 431

P3d 1018 (2018). Whether working conditions became intolerable generally is a question of

fact for the jury. 16A David K. DeWold and Keller W. Allen, Washington Practice Port

Law and Practice § 24:2 (4th ed. 2013).

> ### 2. There are Factual Disputes as to Defendant BPD's Breach of Promises of Specific Treatment in its Actions and Inactions During the Internal Investigation of Kivlin That Proximately Caused His Constructive Discharge

Kivlin asserts that he was forced to resign in substantial part because BPD and the

individual defendants refused to afford him the same treatment it afforded others such as

Chief Mylett, i.e., suspending disciplinary action pending the outcome of criminal

investigation and prosecution if necessary. Had it done so, Kivlin would likely have not

been separated from the City. The Washington Supreme Court *in Burnside v. Simpson

Paper Co.* noted that whether an employment policy manual issued by an employer

contains a promise of specific treatment in specific situations, whether the employee

justifiably relied on the promise, and whether the promise was breached are questions of

fact. *Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 104-05 (1994). "Only if reasonable

minds could not differ in resolving these questions, is it proper for the trial court to decide

them as a matter of law." *Id.* (other citations omitted). Here, as noted by the declarant Bryce

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-27
2:20-cv-00790 RSM

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

Corey, it was common practice to stay discipline because of criminal charges and investigations. Kivlin's reliance on those statements all are factual questions for the jury.

### 3. There are Factual Disputes as to Whether Defendant BPD Violated a Clear Mandate of Public Policy in its Actions and Inactions Leading to Kivlin's Constructive Discharge

A cause of action for wrongful discharge in violation of public policy may be based on either an express or constructive discharge. *Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wash.App. 34, 43, 181 P.3d 864 (2008). In appellate decisions reviewing claims for constructive wrongful termination in violation of public policy, courts commonly examine separately the elements of the tort and the elements of constructive discharge. Kivlin has introduced evidence as to each element of a claim for wrongful termination in violation of public policy. They are that (1) the employee's discharge may have been motivated by reasons that contravene a clear mandate of public policy, and (2) the public-policy-linked conduct was a significant factor in the decision to discharge the worker. M*artin v. Gonzaga Univ.*, 191 Wash.2d 712, 425 P.3d 837, 844 (2018). In a recent case, Division III upheld the following jury instruction:

> It is public policy that a person has the legal right or privilege to be free from deliberate intrusions into her seclusion in a manner that is highly offensive or objectionable to a reasonable person. The intruder must have acted deliberately to achieve the result with the certain belief that the result would happen.

> *Ritchey v. Sound Recovery*,  (No. 53303-1-II) ( Div III. 2020)

This is the basis for Kivlin's public policy claim. This policy, found in the common law and the Washington State Constitution are implicated by the circumstances surrounding Kivlin's separation from BPD. The causal nexus is for the jury.

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

**H.      Kivlin's § 1983 Claims  are Actionable**

**1.      Elements of Kivlin's §1983 Claim**

To state a claim for relief in an action brought under § 1983, Kivlin must establish that he was deprived of a federally protected right and that the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sulliva*n, 526 U.S. 40, 49-50 (1999). The Fourteenth Amendment's guarantee of due process applies when either a constitutionally protected liberty or property interest is at stake. *Vanelli v. Reynolds Sch. Dist. No. 7,* 667 F.2d 773, 777 (9th Cir. 1982). A due process claim requires the court to ask "(1) Was the plaintiff deprived of a protected interest; and (2) if so, what process was due?" *Logan v. Zimmerman Brush Co*., 455 U.S. 422 (1982); see *also Mishler v. Nev. State Bd. of Med. Examiners*, 896 F.2d 408, 409 (9th Cir. 1990).

A § 1983 claim based upon procedural due process contains two elements: 1) a deprivation of liberty or property interest protected by the Constitution; and 2) a denial of adequate procedural protections. *Brewster v. Board of Education of the Lynwood Unified School Distric*t, 149 F.3d 971, 982 (9th Cir.1998). To state a claim under the Due Process Clause, Plaintiff must first establish he possessed a property interest deserving of constitutional protection. *Id.* In this case, it is undisputed that as a career officer, Kivlin had property interest in his continued employment with the BPD and that the essential requirements of interest is notice and an opportunity to respond before he is discharged. *Cleveland Board of Education v. Loudermill et al.,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Pre-termination process need only include oral or written notice of the charges against the employee, an explanation of the employer's evidence, **and an**

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

**opportunity for the employee to present his side of the story**. *Gilbert v. Homar, 520* U.S. 924, 928, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997), emphasis added.

### 2.     Defendant BPD Violated Kivlin's Right to Procedural Due Process

The opportunity to present reasons why a proposed action should not be taken is a fundamental due process requirement. *Loudermill*, 470 U.S. at 546. The key component of due process, when a decision maker is acquainted with the facts, is the assurance of central fairness. *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 779 (9th Cir.1982). "Fairness" is a flexible notion, but one must at least be given notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Id*. (other citations omitted).  It is undisputed that Kivlin was not given that opportunity.  Defendants assert that his union indicated that he did not want the Loudermill but the exhibits to the Chin declaration are inconsistent with her oral representation.  Mr. Kivlin has not testified that he waived that right;  thus, sufficient factual disputes exist as to the reason for not affording him the *Loudermill* hearing or any other post-separation name clearing hearing to preclude summary judgment on his due process claim under §1983.

### 3.     Defendant BPD Violated Kivlin's Right to Equal Protection of the Law

As the Court is well aware, the Equal Protection Clause of the Fourteenth Amendment requires similar treatment under the law for similarly situated people. U.S. Const. amend. XIV, § 1; *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 97*97 (1985); *State v. Ward*, 123 Wash.2d 488, 515, 869 P.2d 1062 (1994). A §1983 claim can arise from violation of this provision. In the record at the

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

CJTC and here, Kivlin has established that other individuals employed by BPD use the

ACCESS data base for allegedly "personal" purposes without the draconian disciplinary

consequences suffered by Kivlin. See Corey Dec. at ¶5.  In the hearing below, Assistant

Chief Arpin acknowledged his awareness of at least one situation involving a BPD officer

during his leadership of the Department. Dkt 16-1, Ex. A 00914-00923. Similarly, it is

undisputed that Kivlin was subject to proposed discipline in part for failing to report to a

fatality accident on his scheduled day off and for allegedly misrepresenting his reason for

unavailability.  His supervisor at the time indicated that it was not necessary after learning

about his whereabouts as he did with Officer Welty as both had personal family

commitments that day. It is for the jury to determine whether Mr. Kivlin's credibility once

the Court determines that  they were similarly situated as a matter of law and should have

been held to the same standard of conduct.  These facts give rise to an Equal Protection

claim that turns on credibility of Mr. Kivlin.    *See* Dkt 16-1, Ex. A, pp. 000784-804.

> **4.      The Individual Defendants are Not**
> **Subject to Qualified Immunity**

Qualified immunity "shield[s] officials from harassment, distraction, and liability

when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231

(2009). To overcome that immunity, a plaintiff must show (1) the violation of a

constitutional right and (2) that the right was clearly established at the time of the alleged

misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001. *Pearson, supra*. A government

official's conduct violates clearly established law when, at the time of the challenged

conduct, a reasonable official would understand that the actions violated the rights  of the

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206)694-2695 (F)
patty@pattyroselaw.com

plaintiff. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To be clearly established, a right's contours must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it" and that "existing precedent . . . placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (quoting *al-Kidd*, 563 U.S. at 741). Here a public employee's right to procedural due process before termination is well established. There is no dispute here that Kivlin was not afforded such an opportunity. Why that occurred will be the subject of further discovery and litigation. The individual defendants are not entitled to qualified immunity on this claim. Similarly, the right to held to the standard of conduct and subject to equal protection of the law is well established. The individual defendants are not entitled to qualified immunity for that claim either. Courts "do[] not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). The contours of a right must be "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Kisela*, 138 S. Ct. at 1153.

### J.     Defendants Have Not Established any Basis for an Award of Attorneys' Fees in its Favor

Without foundation, Defendants asserts an entitlement to their attorneys' fees and cost simply because it attempted unsuccessfully to secure Mr. Kivlin's agreement to dismiss this litigation. As the entire CJTC record was available from the Superior Court, is disingenuous to seek recovery of the costs of that  production.  This case Is not  frivolous as

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-32
2:20-cv-00790 RSM

there are debatable issues upon which reasonable minds might differ, and it is not so totally

devoid of merit that there was no reasonable possibility' of success.. *See In re Recall of*

*Feetham*, 149 Wash.2d 860, 872, 72 P.3d 741 (2003;  *Millers Cas. Ins. Co. of Texas v.*

*Briggs,* 100 Wash.2d 9, 15, 665 P.2d 887 (1983). Here, no such overwhelming evidence or

legal precedent is present  While the parties' clearly dispute the application of certain cases,

Defendants have not shown they are entitled to judgment as a matter of law on all of Mr.

Kivlin's claims.

## VI.    CONCLUSION

For all of these reasons, this Court should deny Defendants' motion in its entirety

and order that discovery proceed so that Mr. Kivlin can remedy the wrongs addressed in his

complaint.

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-33
2:20-cv-00790 RSM

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com

## CERTIFICATE OF SERVICE

I, Patricia S. Rose, declare under penalty of perjury that on the date below, I caused to be filed the above Amended-Corrected  Response Brief,  and Amended  Declaration of, John Kivlin,  and have served upon  the Defendant  to the individuals and via the method of service listed below, a true and correct copy of the foregoing documents.

| Party | Method of Service |
|---|---|
| Jayne Freeman,<br>Attorney for Defendant | x   E-Mail<br>x   E-Service by court |
| Derek Chen<br>Attorney for Defendant | x   E-Mail<br>x   E-Service by court |

Dated: May 11, 2021.

*s/ Patricia S. Rose*

PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT-34
2:20-cv-00790 RSM

LAW OFFICE OF PATRICIA S. ROSE
3417 Evanston Avenue North, #523
Seattle, Washington 98103
(206) 622-8964 (T); (206 )694-2695 (F)
patty@pattyroselaw.com