1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN M. KIVLIN,

                          Plaintiff,

        v.

CITY OF BELLEVUE, *et al.*,

                          Defendants.

No. C20-0790 RSM

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

## I.     INTRODUCTION

This matter comes before the Court on Defendants City of Bellevue, Patrick Arpin, and Carl Kleinknecht's Motion for Summary Judgment.  Dkt. #15.  Plaintiff John Kivlin opposes Defendants' motion. Dkt. #26.[1]  Neither party requests oral argument and the Court finds it unnecessary to rule on the issues.  Having considered Defendants' motion, Plaintiff's Response, Defendants' Reply, the exhibits and declarations attached thereto, and the remainder of the record, the Court GRANTS Defendants' motion as set forth below.

## II.     BACKGROUND

From 2002 until August 2, 2018, Plaintiff Kivlin served as a career Traffic Division officer of the Bellevue Police Department ("BPD").  Dkt. #27 at ¶ 1.  Between September

---

1 Plaintiff Kivlin concurrently filed an unopposed motion to file an overlength response brief, Dkt. #25, which the Court GRANTS.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 1

2017 and August 2018, Kivlin worked as a collision investigator with fellow BPD officer Robert Welty, who also resided in Gig Harbor.  Dkt. #27 at ¶ 25.  In 2017, Kivlin met a woman, Idunn Schneider, online through Craigslist and began an extramarital relationship with her.  *Id.* at ¶¶ 1, 7.  In the early months of their relationship, Schneider lied about her name, age, profession, and whether she had children.  During their relationship, Kivlin used BPD's confidential database, ACCESS, to determine Schneider's identity and age.  *Id.* at ¶ 9.  In early April 2018, Kivlin's wife received a text message notifying her that Kivlin was having an affair.  Kivlin then informed Schneider that their affair was over.  *Id.* at ¶ 10.

      i.      Kivlin's Resignation from BPD

On or around April 27, 2018, Schneider reported to BPD that Kivlin had assaulted and threatened her.  *Id.* at ¶ 13.  Assistant Chief Arpin authorized an investigation into Schneider's allegations and placed Kivlin on administrative leave with pay.  Dkt. #27-7 at 2. On April 28, 2018, around 1:00AM, Major Carl Kleinknecht with the King County Sheriff's Office ("KCSO") arrested Kivlin based on Schneider's allegations that on or about April 3, 2018, he unlawfully assaulted Schneider and knowingly threatened to cause bodily injury to her immediately or in the future.  *Id.* at 4.  At the same time, Kleinknecht served Kivlin with notice that BPD had initiated an internal administrative investigation, Formal Standards #18-006, to determine whether Kivlin had engaged in conduct in violation of BPD's internal policies.  *Id.* at 4.

Shortly after Kivlin's arrest, KOMO News published an article stating that an unidentified BPD officer was arrested after a report of a domestic violence assault.  Dkt. #27 at ¶ 13 (citing KOMO News, *Bellevue police officer arrested after domestic violence allegation*, April 28, 2018, *available at* https://komonews.com/news/local/bellevue-police-officer-arrested-after-domestic-violence-allegation).  The article contained a quote from

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2

Assistant Chief Arpin that reads as follows: "'It's a very unfortunate thing that occurred,' Bellevue Police assistant chief Patrick Arpin said. 'A bad personal choice is the best way I'd put it. We want to get out in front of it.'" *Id.* The article further stated that BPD was conducting an internal investigation while the King County Sheriff's Office conducted the criminal investigation. *Id.* On April 30, 2018, BPD issued a press release confirming that an unidentified officer had been "arrested after an allegation of domestic violence assault." *Id.* at ¶ 15; Dkt. #27-6 at 2. The press release did not identify Kivlin by name but specified that the unidentified officer was "a 16-year veteran" of BPD. *Id.*

The City of Bellevue ("the City") hired an outside investigator, Katherine Weber, to carry out the internal investigation into Kivlin's conduct. Dkt. #16-1 at 86. Ms. Weber was scheduled to interview Kivlin as part of the investigation on June 12, 2018, but on the day of his scheduled interview, Kivlin reported to his supervisor and guild representative that he could not participate due to stress-related reasons. *Id.* at 87. On July 6, 2018, prior to completion of Ms. Weber's investigation, Kivlin offered his letter of resignation from BPD with a request that his resignation be effective August 2, 2018. Dkt. #27-11 at 2. In the meantime, he remained employed and on leave with BPD with full pay and benefits.

Ms. Weber continued her investigation and issued an investigation report on July 23, 2018. Dkt. #16-1 at 86. The report concluded that a "high preponderance of compelling evidence sustain[ed] a factual finding" that Kivlin had (1) improperly used the City's equipment and software, including the NORCOM Mobile system and the ACCESS system, for personal, non-law enforcement purposes; (2) left Bellevue city limits in his patrol vehicle while on duty, without the knowledge or authorization of his supervisor, for non-law enforcement reasons; (3) logged himself out as "on a workout" to meet Schneider for personal reasons on at least one occasion; (4) used sick leave to meet Schneider for sex on at least one

other occasion; and (5) misrepresented to his supervisor why he was unavailable to respond to a call out involving a fatal accident. *Id.* at 105. Ms. Weber noted that "[w]hile it is usually preferable to interview a subject prior to offering factual findings, I find it unnecessary to postpone my findings with respect to certain [] allegations against Ofc Kivlin. . . . With respect to the allegations . . . there is an overwhelming amount of compelling and objectively unimpeachable evidence to support these allegations, regardless of Ofc Kivlin's participation in the investigation." *Id.* at 87-88. The report only addressed the five above-listed allegations, and Ms. Weber determined she would reserve findings on eleven other allegations until after Kivlin's interview and any appropriate follow-up.

On July 24, 2018, upon review of Ms. Weber's findings, Assistant Chief Arpin proposed termination of Kivlin's employment and issued a pre-termination notice to Kivlin and his union representatives. Dkt. #16-1 at 228. The pre-termination notice included a *Loudermill* notice, which informed Kivlin that he had the right to respond within five business days if he believed the action was not appropriate. *Id.* at 229. On July 26, 2018, BPD's legal advisor communicated with the President of the Bellevue Police Officer's Guild ("BPOG") and BPOG's legal counsel regarding Kivlin's employment. Dkt. #19 at ¶ 5. BPOG's president and legal counsel encouraged the City to accept Kivlin's resignation and allow him to resign on August 2, 2018, rather than proceed with a *Loudermill* hearing and termination. *Id.* The City allowed Kivlin to resign on August 2, 2018. *Id.*

ii.     Revocation of Kivlin's Peace Office Certification

On June 24, 2018, the Criminal Justice Training Commission ("CJTC") filed a Statement of Charges seeking to revoke Kivlin's peace officer certification based on Kivlin's discharge from BPD for three counts of disqualifying misconduct: (1) use of the confidential ACCESS system for personal use; (2) making false or misleading statements to a public

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 4

servant when he requested sick leave to meet with an intimate partner; and (3) making false or misleading statements to a public servant when he misrepresented to his supervisor that he was unavailable to respond to a fatality accident because he was in Olympia, when he was unavailable because he planned to meet an intimate partner.  Dkt. #15-1 at 3.  Kivlin requested a hearing on the CJTC's Statement of Charges, and on December 17-18, 2019, the Washington State CJTC Hearing Panel held an administrative hearing to determine whether Kivlin's peace officer certification should be revoked.  *Id.*

On January 13, 2020, the CJTC Hearing Panel issued an Order with Findings of Fact and Conclusions of Law.  *Id.*  The Hearing Panel concluded by clear and convincing evidence that Kivlin had engaged in misconduct that disqualified him from serving as a law enforcement officer in Washington and revoked his peace officer certification. *Id.* at 13.  Specifically, the Hearing Panel determined that Kivlin had engaged in misconduct under the first and third counts: (1) improper use of the ACCESS system constituting the crime of Official Misconduct under RCW 9A.80.010; and (2) making a false or misleading statement to a public servant in violation of RCW 9A.76.175 when he falsely stated he was with his family in Olympia and could not respond to a fatality accident.  The Hearing Panel concluded that although Kivlin resigned, he resigned in anticipation of discipline and that if such discipline were carried forward, Assistant Chief Arpin would have been more likely than not to discharge Kivlin for either one of the instances of disqualifying misconduct.  *Id.* at 12.

Kivlin appealed the CJTC's Findings and Conclusions to King County Superior Court.  On December 18, 2020, Judge Melinda Young affirmed the CJTC's order, concluding that substantial evidence in the record supported the CJTC's findings and that Petitioner Kivlin received due process and fair evidentiary rulings throughout the proceedings.  Dkt. #15-2.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 5

iii.     Procedural History

On April 27, 2020, Kivlin filed this action against Defendants in King County Superior Court alleging defamation, invasion of privacy, injurious falsehoods, wrongful discharge, and violations of his rights to due process and equal protection under 42 U.S.C. § 1983 and the Washington state constitution.  Dkt. #1-1.  Defendants removed the action to this Court on May 27, 2020.  Dkt. #1.  Defendants moved for summary judgment dismissal on April 22, 2021.  Dkt. #15.

## III.     DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Id.* at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which

1   she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477

2   U.S. 317, 323 (1986).

3   **B.  Defamation**

4       Kivlin argues that Defendants' statements to the news media regarding his arrest—

5   specifically, Assistant Chief Arpin's statements to KOMO News on April 28, 2018 and the

6   BPD's April 30, 2018 press release confirming the arrest of a 16-year veteran of BPD—

7   falsely implied that he had engaged in criminal conduct and other misconduct and therefore

8   amount to defamatory statements.

9       In order to prove defamation, a plaintiff must establish the following elements: (1)

10  an unprivileged communication, (2) falsity, (3) fault, and (4) damages. *Commodore v.*

11  *University Mechanical Contractors,* 120 Wash.2d 120, 133, 839 P.2d 314 (1992); *Mark v.*

12  *Seattle Times,* 96 Wash.2d 473, 486, 635 P.2d 1081 (1981). When a defendant in a

13  defamation action moves for summary judgment, the plaintiff has the burden of establishing

14  a prima facie case on all four elements. *LaMon v. Butler,* 112 Wash.2d 193, 197, 770 P.2d

15  1027 (1989). The prima facie case must consist of specific, material facts, rather than

16  conclusory statements, that would allow a jury to find that each element of defamation exists.

17  *Id.*  Although Kivlin's complaint generally cites to "statements regarding Plaintiff . . . to

18  members of the public through written and/or oral statements to the news media," Dkt. #1-

19  1 at ¶ 5.2, the only statements he specifically identifies are Assistant Chief Arpin's April 28,

20  2018 statement to KOMO News and the April 30, 2018 press release.  The Court will address

21  each statement in turn.

22      i.      Assistant Chief Arpin's Statement is Nonactionable Opinion

23      Before assessing the truth or falsity of an allegedly defamatory statement, "a plaintiff

24  must prove that the words constituted a statement of fact, not an opinion." *Robel v. Roundup*

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 7

*Corp.*, 59 P.3d 611, 621 (Wash. 2002).  Expressions of opinion are protected under the First Amendment and are therefore not actionable.  *Robel v. Roundup Corp.*, 148 Wash. 2d 35, 55, 59 P.3d 611, 621 (2002) (citing *Camer v. Seattle Post–Intelligencer,* 45 Wash. App. 29, 39, 723 P.2d 1195 (1986)).  Kivlin argues that a reasonable jury may find Assistant Chief Arpin's statement to KOMO News "not solely an opinion but a factual representation about Kivlin's character and behavior."  Dkt. #26 at 23.[2]  Under the Washington test for whether a statement is a nonactionable opinion, courts must consider "at least (1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts."  *Dunlap v. Wayne*, 105 Wash. 2d 529, 539, 716 P.2d 842, 848 (1986).

Having considered the totality of the circumstances, the Court finds that Assistant Chief Arpin's statement in the KOMO News story, taken as a whole, is not an actionable assertion of fact.  Regarding the first *Dunlap* factor, it is well-established that publications conveying "pertinent information to the public in matters of public interests are permitted wide latitude . . . mere expressions of opinion or severe criticism are not libelous if they clearly go only to the merits or demerits of a condition, cause or controversy which is under public scrutiny . . . ."  *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (internal quotations and citation omitted).  Such is the case here, where the KOMO News story was conveying pertinent information regarding a matter of public interest: the arrest of a public servant in connection with domestic violence allegations.  Assistant Chief Arpin used cautionary terms of apparency when he stated, "A bad personal

---

2 In *Dunlap*, the Washington Supreme Court declined to resolve whether this issue was a question of law or question of fact reserved for a jury.  *Dunlap*, 105 Wash. 2d at 541, n.2.  However, it noted that the Court of Appeals decided this issue as a question of law.  This Court follows *Dunlap*, concluding that "the circumstances of the communication at issue dispel any ambiguity" such that it likewise need not reach the issue.  *Id.*

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 8

choice *is the best way I'd put it*," Dkt. #27 at ¶ 13 (emphasis added), indicating that he was expressing his personal view of the situation.

The second *Dunlap* factor regarding audience expectations likewise supports a finding that Arpin's statement was a nonactionable opinion. Kivlin insists that "a reasonably prudent public official would have declined to comment on such a serious allegation," Dkt. #26 at 23, yet his argument disregards the fact that Arpin's statement only addressed the arrest, not the charge itself. Moreover, the public—the intended audience of the KOMO News article—would expect a BPD spokesman to respond to the news of an officer's arrest with concern. Kivlin's argument that a reasonable official simply would have remained silent minimizes the severity of the incident and ignores the significant public scrutiny that local police departments must navigate. Indeed, the final line of Assistant Chief Arpin's statement is an acknowledgment that he offered his statement in hopes of minimizing damage to BPD's credibility: "We want to get out in front of it." Dkt. #27 at ¶ 13.

Finally, when viewed in context, the statement does not imply the existence of undisclosed facts. *Dunlap*, 716 P.2d at 848. The KOMO News story informs the audience that the alleged incident arose when the unnamed officer and alleged victim met about three weeks prior. It also expressly states that both BPD and KCSO were conducting investigations into the truth of the allegations. Considering this context, the Court cannot find that Assistant Chief Arpin's statement implied that he had any information beyond those facts provided in the article: that the unnamed officer and alleged victim previously met, and that meeting gave rise to the allegations under investigation.

Accordingly, having considered the *Dunlap* factors, the Court concludes as a matter of law that Assistant Chief Arpin's statement is not an actionable statement of fact.

Summary judgment dismissal of this claim is therefore warranted.  *Jinni Tech, Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2021 WL 4844525, at *6 (W.D. Wash. Oct. 18, 2021).

ii.     Defendants' Statements were "Substantially True"

Even if the Court considered Assistant Chief Arpin's statement an assertion of fact rather than opinion, Kivlin has not met his burden to show that there is a genuine issue of material fact as to whether the statement is "substantially true."  Kivlin does not dispute the truth of Arpin's assertion.  Indeed, his counsel characterizes his involvement with Schneider as "horribly bad judgment," Dkt. #16-5 at 42, and Kilvin himself has conceded that his involvement with her "was a complete mistake."  *Id.* at 71.  Instead, Kivlin argues that Chief Arpin's statement falsely implies that Kivlin's arrest was justified and/or that he committed a serious infraction warranting his arrest and was probably guilty of the domestic violence charge.  *See* Dkt. #26 at 22-23.  This reading is contradicted by the plain language of Arpin's statement, which makes no comment on Kivlin's probable guilt as to the domestic violence charge or whether his arrest was justified.  The vagueness of the Assistant Chief's statement lends itself to many possible interpretations, which is precisely why the defamatory nature of a statement hinges on its plain language—not any possible meaning drawn from that statement.  *See Yeakey v. Hearst Commc'ns, Inc.*, 156 Wash. App. 787, 792, 234 P.3d 332, 335 (2010) (defamatory character of the language must be "apparent *from the words themselves*" rather than "by innuendo or by the conclusions of the pleader.")  (emphasis added) (internal quotations and citations omitted).  To the extent Kivlin argues that an implication of his guilt may be drawn from Arpin's statement, "a plaintiff may not base a defamation claim on the negative implication of true statements."  *Id.* (citing *Lee v. Columbian, Inc.*, 64 Wash. App. 534, 538, 826 P.2d 217 (1991)).  For these reasons, Kivlin's attempt to read defamatory meaning into Assistant Chief Arpin's statement is unavailing.

Turning to the April 30, 2018 BPD press release, Kivlin has likewise failed to meet his burden to show that there is a genuine issue of material fact as to whether the statement is "substantially true." The press release set forth undisputed facts that on April 28, 2018, a 16-year veteran of BPD was arrested after an allegation of a domestic violence assault. Dkt. #27-6 at 2. The release further clarified that the officer was not named "as he has not been charged with any crime." *Id.* Kivlin cannot, and does not, dispute that these events occurred. Summary judgment on these claims is therefore proper.

    iii.    Remaining Defamation Claims are Generalized and Conclusory

Regarding Kivlin's remaining defamation claims, he fails to specifically identify the statements made by Defendants that gave rise to the alleged defamation. While his Response generally references untrue allegations made by unnamed Defendants[3] over the course of the BPD investigation and "public records responses containing defamatory information," Dkt. #26 at 24, these generalized and conclusory allegations are insufficient to survive summary judgment. To establish a prima facie case of defamation, a plaintiff must set forth "specific, material facts, rather than conclusory statements . . . ." *LaMon,* 112 Wash.2d at 197, 770 P.2d 1027. Without such specific, material facts identifying the allegedly defamatory statements at issue, the Court cannot find any material dispute of fact to preclude summary judgment dismissal of Kivlin's remaining defamation claims.

**C. Invasion of Privacy**

Kivlin claims that Defendants' actions that publicized his arrest and employment status invaded his privacy by placing him in a false light. Dkts. #1-1 at ¶¶ 6.1-6.5. Under

---

3 Kivlin also urges this Court to consider Kivlin's own statements made during his job search process as defamatory statements under the compulsory self-publication doctrine adopted in other states. *See* Dkt. #26 at 24. However, Kivlin concedes that "Washington courts have thus far rejected application of this doctrine." *Id.* The Court therefore declines to address this argument further.

Washington law, a "false light" invasion of privacy claim arises when a defendant publicizes a matter that places another in a false light where "(a) the false light would be highly offensive to a reasonable person and (b) the [defendant] knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed." *Eastwood v. Cascade Broad. Co.*, 106 Wn.2d 466, 470–71 (1986). "Publicity for the purposes of invasion of privacy means 'communication to the public at large so that the matter is substantially certain to become public knowledge.'" *Purcell v. Am. Legion*, 44 F. Supp. 3d 1051, 1061 (E.D. Wash. 2014) (quoting *Fisher v. State ex rel. Dep't of Health*, 125 Wn. App. 869, 879 (2005)).

Kivlin's claims under this count contain only a formulaic recitation of the elements of invasion of privacy by false light without identifying which of "Defendants' actions" he challenges and why these actions purportedly portrayed him in a false light. *See* Dkt. #1-1 at ¶ 6.2. The Court gleans from Kivlin's Response that he specifically takes issue with Assistant Chief Arpin's statement to KOMO News. *See* Dkt. #26 at 26. This claim fails for the same reasons his defamation claims fail. Although defamation and invasion of privacy by false light are distinct causes of action, they both "rest on the disclosure of *false or misleading information . . . .*" *Seaquist v. Caldier*, 8 Wash. App. 2d 556, 564, 438 P.3d 606, 612, *review denied*, 193 Wash. 2d 1041, 449 P.3d 657 (2019). As the Court concluded with respect to Kivlin's defamation claim, Kivlin has failed to raise a material dispute of fact that false or misleading information was published in Assistant Chief Arpin's statement to KOMO News, the April 30, 2018 BPD Press Release, or any other statement made by Defendants. Furthermore, while Kivlin argues that Assistant Chief Arpin "should have known the impact" of the publication of the statements attributed to him, Dkt. #26 at 26, he fails to cite to any evidence in support of this conclusory assertion. Accordingly, Kivlin has

failed to raise a material dispute of fact as to (1) publication of false or misleading information and (2) Defendants' knowledge or reckless disregard for the impact of publication. For these reasons, his invasion of privacy claim fails as a matter of law.

**D. Injurious Falsehoods**

Kivlin alleges that Defendants' publication of false statements has adversely affected his ability to obtain employment with compensation comparable to what he earned as a BPD officer. Dkt. #1-1 at ¶¶ 7.1-7.4. As an initial matter, Kivlin's complaint fails to cite any statute or case law indicating that Washington law recognizes the tort of injurious falsehood. His Response merely cites to Washington law on defamation claims, without acknowledgment that injurious falsehood is a separate cause of action. Given that Washington courts have recognized that the tort of injurious falsehood "has not been adopted in Washington," *Allyis, Inc. v. Schroder*, 197 Wash. App. 1082 (2017), dismissal is appropriate on this basis alone.

Moreover, even if the Court considered Kivlin's injurious falsehood claim, he has not meaningfully addressed any of the required elements. Injurious falsehood requires that a defendant publish a false statement harmful to the interests of another if (a) the defendant intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so; and (b) the defendant knows that the statement is false or acts in reckless disregard of its truth or falsity. *Id.* (citing Restatement (Second) of Torts § 623A (Am. Law Inst. 1977)). Here, Kivlin has failed to raise a material dispute of fact that Defendants intended for publication of their statements to result in harm or should have recognized it was likely to do so. Furthermore, like his defamation and invasion of privacy claims, Kivlin's claim for injurious

falsehood fails to raise a material dispute of fact that Defendants made any false statement.

For these reasons, his injurious falsehood claim fails as a matter of law.

### E.  Wrongful Discharge

Kivlin also claims that his termination of employment with BPD constituted wrongful discharge in violation of public policy as set forth under RCW 41.12.  RCW § 41.12.090 provides that "[n]o person in the classified civil service . . . shall be removed, suspended, demoted or discharged except for cause, and only upon written accusation of the appointing power . . . ."  RCW § 41.12.090.  The statute further provides that all investigations under this section require a public hearing after reasonable notice to the accused, who shall have "an opportunity of appearing in persona and by counsel, and presenting his or her defense." *Id.*

In alleging wrongful discharge, Kivlin claims that BPD constructively discharged him without affording him rights guaranteed to him under his collective bargaining agreement with his union and the Washington state constitution.  Dkt. #1-1 at ¶¶ 8.1-8.7.  Under Washington law, wrongful constructive discharge requires an employee to prove four elements: (1) an employer deliberately made working conditions intolerable for the employee; (2) a "reasonable person" in his position would be forced to quit; (2) that he quit because of the conditions and not for any other reason; and (4) he suffered damage as a result of being forced to quit.  *Hill v. GTE Directories Sales Corp.,* 71 Wash.App. 132, 143, 856 P.2d 746 (1993).

Here, the factual findings of the CJTC, upheld by the Washington State Superior Court, preclude Kivlin from now arguing that he resigned due to intolerable working conditions and for no other reason.  The CJTC and state court made the factual determination that Kivlin resigned in anticipation of his for-cause termination.  *See* Dkt. #15-1 at ¶ 4.24

("[T]he totality of the circumstances show that Mr. Kivlin resigned in anticipation of discipline, and if such discipline were carried forward, Assistant Chief Patrick Arpin would have been more likely than not to discharge Mr. Kivlin for either one of the instances of disqualifying misconduct that are described in paragraphs 4.20 and 4.23."); *see also* Dkt. #15-2 at 3 ("Although the notice of termination had not yet been served when [Kivlin] gave his notice of resignation . . . it was clear that [he] was aware that discipline was imminent and was aware of the nature of the discipline that was imminent.").  It is well-established that "[a] resignation is not rendered involuntary because an employee tenders her resignation to avoid termination for cause." *Satter v. Washington Dep't of Ecology*, 462 F. App'x 685, 687 (9th Cir. 2011).  As in *Satter*, Kivlin had a choice between resignation and termination. Rather than argue his case or wait for BPD's imposition of discipline, he chose to resign. Based on this previous factual determination, Kivlin's constructive discharge claim automatically fails.  *See id.* ("Merely because plaintiff was faced with an inherently unpleasant situation in that her choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of her resignation.") (internal quotations and citation omitted).

Kivlin does not dispute the findings of the CJTC and state court.  Instead, he argues that these factual findings in the previous litigation do not have preclusive effect in the instant action.  This argument is unavailing.  Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *See Montana v. United States*, 440 U.S. 147, 153 (1979) (citation omitted).  Under Washington law, a party is barred from relitigating an issue where "(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the

earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied." *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 152 Wash. 2d 299, 307, 96 P.3d 957, 961 (2004). All four factors are met here.

On the first factor, the CJTC and superior court resolved the factual issue of whether Kivlin voluntarily resigned in anticipation of for-cause termination—a finding of fact that was necessary to the CJTC's decision to revoke his peace officer certification. *See* Dkt. #15-2 at 3. Even though this factual issue arose in the context of a different claim in the instant litigation, collateral estoppel still bars its relitigation. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (Collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."); *see also Wallace v. Island Cty.*, No. C09-0823RSL, 2011 WL 6210633, at *15 (W.D. Wash. Dec. 13, 2011) (factual findings made by CJTC had preclusive effect and could not be relitigated).

On the second factor, Kivlin concedes that he has not sought further review of the superior court's decision such that its decision operates as a final judgment. Dkt. #26 at 16. Regarding the third factor, Kivlin attempts to argue that the parties before the CJTC were not the same as those in the instant action. This argument fails, given that Kivlin was a party to both actions. *See Taylor*, 553 U.S. at 892 (defensive use of collateral estoppel "precludes a plaintiff from relitigating identical issues by merely switching adversaries."). Finally, Kivlin argues that applying collateral estoppel here would result in "substantial injustice" as it would deprive him of the opportunity to litigate or remedy the reputational harm he has suffered. Dkt. #26 at 19. However, as set forth *supra*, the Court has addressed his defamation, invasion

of privacy, and injurious falsehood claims on the merits.  Accordingly, this argument has no bearing on whether the Court applies collateral estoppel to his remaining claims.

For these reasons, Kivlin is barred from relitigating the factual findings made by the CJTC and upheld by the state court that Kivlin voluntarily resigned in anticipation of his for-cause termination.  Because this factual finding is fatal to his wrongful constructive discharge claim, *see Satter*, 462 F. App'x at 687, dismissal as a matter of law is proper.

### F.  Section 1983 Due Process Claims

To survive summary judgment on his § 1983 due process claims, Kivlin must allege facts that, if true, show that Defendants "took an adverse employment action that deprived him of a constitutionally protected liberty or property interest without due process." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 940 (9th Cir. 2009).  Kivlin claims that Defendants deprived him of his property interests in continued employment with BPD and in his peace officer certification without due process.  Dkt. #1-1 at ¶ 9.2.  He further claims that Defendants' publication of stigmatizing charges deprived him of liberty interests in reputation and pursuit of chosen profession.  *Id.* at ¶ 9.6.  As set forth below, each of these claims fails as a matter of law.[4]

Given that Kivlin voluntarily resigned, his alleged deprivation of a property interest in his position with BPD fails as a matter of law. *See Knappenberger*, 566 F.3d at 940 (no deprivation of property or liberty interest in former employment where employee voluntarily retired).  While courts have found that a voluntary resignation amounts to constructive discharge in certain cases, *see id.*, the state court's conclusion that Kivlin resigned in anticipation of for-cause termination precludes a finding of constructive discharge here.  *See*

---

[4] Defendants also argue that Kivlin's Section 1983 claims against individual defendants are barred by qualified immunity.  *See* Dkt. #15 at 25.  Because the Court finds that Kivlin's claims fail as a matter of law, the Court need not address this argument.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 17

*Satter*, 462 F. App'x at 687; *see also* § III(e), *supra*.  His alleged deprivation of a property interest in his peace officer certification was likewise resolved in the state court litigation, wherein Judge Young determined that revocation of his certification by the CJTC was lawful. *See* Dkt. #15-2 at 5 ("The Commission engaged in a lawful procedure and decision-making process; the Petitioner's due process rights (both procedural and substantive) were not violated, nor did a constitutional violation occur.").  He cannot relitigate this issue here.

Turning to Kivlin's third claim, Kivlin alleges that Defendants' publication of stigmatizing and untrue allegations about his conduct deprived him of liberty interests in reputation and pursuit of chosen occupation.  To prevail on a procedural due process claim for publication of stigmatizing charges, a public employee must show that "(1) the accuracy of the charge is contested; (2) there is some public disclosure of the charge; and (3) the charge is made in connection with termination of employment." *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998) (quoting *Matthews v. Harney County,* 819 F.2d 889, 891 (9th Cir.1987)).  Again, Kivlin is barred from relitigating the factual determination that he voluntarily resigned in anticipation of for-cause termination.  Because he voluntarily resigned, publication of stigmatizing charges do not give rise to a procedural due process violation. *Nissen v. Lindquist*, No. C16-5093 BHS, 2018 WL 466598, at *4 (W.D. Wash. Jan. 18, 2018). !!!

Regarding his substantive due process claim, a terminated or disciplined employee "has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the [discipline] is publicly disclosed." *Cox v. Roskelley,* 359 F.3d 1105, 1110 (9th Cir. 2004) (citing *Bd. of Regents v. Roth,* 408 U.S. 564, 573 (1972)).  Although the Ninth Circuit has not addressed the issue, district courts in this Circuit have dismissed substantive due process violations based on reputational injury for plaintiffs who

failed to request a name-clearing hearing.  *Humann v. City of Edmonds*, No. C13-101 MJP, 2014 WL 4161974, at *10 (W.D. Wash. Aug. 19, 2014); *Reiber v. City of Pullman*, 918 F. Supp. 2d 1091, 1102 (E.D. Wash. 2013) ("[A] plaintiff who fails to request a name clearing hearing is precluded from asserting a substantive due process claim on an injury to reputation theory.").  Here, Kivlin chose to resign rather than proceed through the for-cause termination process, which would have included the *Loudermill* hearing, and he has not raised a material dispute of fact that he requested a separate name-clearing hearing.  Moreover, the CJTC hearing and state court appeal, which squarely addressed the counts of disqualifying misconduct at issue in his pre-termination notice from BPD, afforded Kivlin the opportunity to clear his name on these issues and determine whether he should be permitted to remain certified as a peace officer.  *See Mustafa*, 157 F.3d at 1179 (arbitration hearing satisfied name-clearing requirement).  For these reasons, Kivlin's substantive due process claim fails as a matter of law.

**G.  Section 1983 Equal Protection Claim**

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40, (1976)).  Here, Kivlin asserts violations of his right to equal protection based on unequal treatment of "at least two other individual officers" who used the ACCESS database for personal reasons not related to law enforcement yet were not subject to any personnel action, disciplinary action, or decertification as peace officers.  Dkt. #1-1 at ¶¶ 10.1-10.6.  Kivlin has made no effort to allege—let alone introduce

evidence—that he is a member of a protected class or that Defendants acted with the intent to discriminate. On this basis alone, his equal protection claim fails as a matter of law.

## H. State Constitutional Law Claims

Finally, Kivlin asserts violations of his right to due process and equal protection under Article 1, Sections 3, 7 and 12 of the Washington state constitution. Dkt. #1-1 at ¶¶ 9.6, 9.9, 10.4-10.5. However, as Defendants point out in their motion, Washington courts routinely dismiss claims for damages based on state constitutional violations. *See, e.g.*, *Lewis v. Soc'y of Couns. Representing Accused Persons*, 2013 WL 6513009, at *5 (W.D. Wash. 2013) ("The Washington legislature has not enacted augmentative legislation (such as 42 U.S.C. § 1983) or otherwise provided a method for vindicating rights conferred by the state constitution, and 'Washington courts have consistently refused to recognize a cause of action in tort for violations of the state constitution' in the absence of such legislative direction.") (quoting *Janaszak v. State*, 173 Wn. App. 703, 734, 297 P.3d 723 (2013); *see also Blinka v. Wash. State Bar Ass'n*, 109 Wn. App. 575, 591, 36 P.3d 1094 (2001), *rev. den*. 146 Wn.2d 1021 (2002) (courts should refuse to recognize implied cause of action under state constitution in absence of legislative guidance). Kivlin does not meaningfully address these arguments for dismissal in his Response. Consistent with the case law relied upon by Defendants, the Court finds that Kivlin's claims under the Washington state constitution fail as a matter of law.

## I. Statutory Fees and Costs

In addition to moving for dismissal, Defendants seek an award of attorney's fees and costs under 42 U.S.C. § 1988 and RCW 4.84.185. Dkt. #15 at 25. RCW 4.84.185 "permits the court to award reasonable attorney fees in *any* civil action, upon written findings that the action is frivolous in its entirety and was advanced without reasonable cause." *Reid v. Dalton,* 124 Wash. App. 113, 125, 100 P.3d 349 (2004) (*citing Biggs v. Vail,* 119 Wash.2d

129, 133–34, 830 P.2d 350 (1992)) (*emphasis in original*).  A concerning number of Kivlin's claims fail to allege necessary elements or allege causes of action that are not cognizable under Washington law.  However, the Court cannot conclude that this action is "frivolous in its entirety."  For that reason, Defendants shall not be awarded attorney's fees and costs pursuant to this statute.

Under 42 U.S.C. § 1988, "a district court may award attorneys' fees to a prevailing defendant in a civil rights case if the plaintiff's claims are 'unreasonable, frivolous, meritless, or vexatious.'"  *Margolis v. Ryan,* 140 F.3d 850, 854 (9th Cir. 1998) (*quoting Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421 (1978)).  To determine whether a plaintiff's claims are sufficiently meritless to justify a fee award to the defendant, a court considers whether claims are frivolous and lack foundation, regardless of the plaintiff's subjective good faith in bringing such claims.  *Hughes v. Rowe,* 449 U.S. 5, 14 (1980).  This includes cases where (1) reasonable inquiry was not made and which are insufficient as a matter of law, *Margolis*, 140 F.3d at 854; (2) the causes of action do not provide liability against defendants, *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997); (3) the case seeks money damages from immune defendants, *Franceschi v. Swartz*, 57 F.3d 828, 832 (9th Cir. 1995); or (4) the case has no evidence supporting it, *Evers v. County of Custer,* 745 F.2d 1196, 1199 (9th Cir. 1984).

Kivlin's equal protection claim easily falls into the above-listed categories.  He has made no effort to allege membership in a protected class or Defendants' intent to discriminate, nor has he introduced any evidence in support of these necessary elements.  *Margolis*, 140 F.3d at 854; *Evers,* 745 F.2d at 1199.  However, the Court cannot reach the same conclusion with respect to Kivlin's Section 1983 due process claims.  Although Defendants ultimately prevailed on summary judgment, there is insufficient evidence to

support a finding that Kivlin's due process claims were so unreasonable and lacking in foundation so as to justify a fee award.

## IV.    CONCLUSION

Having reviewed the relevant briefing, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiff's Motion for Leave to file an Over-length Brief, Dkt. #25, is GRANTED;

(2) Defendants' Motion for Summary Judgment, Dkt. #15, is GRANTED in entirety. Plaintiff's claims are DISMISSED;

(3) Defendants' request for fees and costs under 42 U.S.C. § 1988 and RCW 4.84.185 is DENIED.

DATED this 4th day of November, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 22